Judge Geaham
delivered the opinion of the Court.
The appellees, complainants in the Circuit Court, by proper allegations in their bill, obtained an attachment, on a tract of five hundred and eighty-one acres, and one of twenty-nine acres of land, the property of Harrison, to satisfy a debt which Harrison, with other obligors, who are insolvent, owed to them. The bill was filed and process issued thereon, on the 6th January, 1844. Several executions had previously issued against Harrison’s estate, and were then in the hands of the Sheriff. After process had been served on Harrison, he in February afterwards sold and conveyed to Sasseen two hundred and twenty-eight acres of the land. The greater portion of the sum paid.by Sasseen was applied to payment and satisfaction of these executions.
Barclay and Ryan, at the March term 1844, obtained a judgment at law against Harrison, execution issued upon it, which together wih some seven or eight other executions were levied on the land attached, and at April 1844, the land was sold and Beall became the purchaser at the price of $120. In June afterwards, these executions having been levied on Harrison’s equity of redemption in the land, it was sold, and Beall became the purchaser for the sum of $2200 25. The aggregate amount of these sales being divided pro rata among the several executions, that of Barclay and Ryan was credited by $620 63, leaving more' than half *262 their demand yet unpaid. By an amended bill, Sasseen and Beall were made defendants, and because their respective purcháses had been made pendente lite, a decree was sought to sell the land for the residue of the debt, and on a final hearing the Court so decreed. Various errors have been assigned by Beall and Sasseen, the former having appealed from and the latter prosecuting a writ of error to the decree.
'Where two .chancery attachments are obtained the complainant in the bill for the second attachment is a competent witness for complainant in the .first.
¡Copies of notes in the hands of a ■third person who .can be required to produce them are not competent evidence.
The statement of a vendor after he has passed his. title are not evidence against vendee.
It is not necessary to notice these errors in detail. The proof in the cause justified, as we believe, the issuing of the attachment. Boyd having also obtained an attachment in Chancery, which had been levied on this land or a part of it, was used as a witness for complainants. The Court overruled an objection to his competency, and we suppose rightly done so. He was not a party to this suit, and its decision in favor of the complainants could not promote his interest. The objections against him were to his credibility atid not to his competency as a witness.
It was not proper to permit the copies of the two notes of Beall to be read as evidence. They were in the hands of a third person who could have been compelled to produce them on the trial had their production been necessary, but as Beall substantially admits the facts which these copies conduce to prove, their admission as evidence did him no injury.
The statements of a vendor made after he has conveyed his title, are not evidence against his vendee. Besides the deed made to Beall by the Sheriff, Harrison had also conveyed to him afterwards. Harrison’s subsequent statements, so far as they affected the interest of Beall, should have been execluded. These are, however, all minor and unimportant points in this controversy, which mainly turns on the facts already stated, taken in connection with the following. It is proved that Barclay, one of the complainants was present at the last sale, and was himself a bidder. The Sheriff, at the time of making the sale, gave public notice that attachments had been levied on the land. It is proved by Hays and others, that Hays, as the lawyer of Boyd. *263 and as the advertiser of Barclay, gave, at the time, public notice of the pendency of these attachments in Chancery, that they would overreach the Sheriff’s sale, and that the purchaser would buy, subject to these attachments. It is also proved by Hays that whilst the sale was going on, Beall, in a private conversation, stated in substance that he knew of the pendency of the attachments.
Though a mortgagee who stands by at a sale of the mortgaged property and does not assert it and receivelheseproceeds of the sale will be estopped thereafter to assert it, (4 B. Monroe, 531) yet it is not so where the lien was acquired on the property by attachment iri chancery. (3 B~ Monroe 133; 580.)
In view of the facts stated, it is'now insisted that the levy of the complainant’s execution on the land, and one of them being a bidder at the sale, was virtually a waiver of the lien previously acquired by their attachment in Chancery. The case of Waller vs Tate, (4 B. Mon. 531,) is cited in support of this position. That was the case of a mortgage. The equity of redemption in the property mortgaged was not the subject of sale for the debt secured by the mortgage. The land was sold in the usual terms without any reference to mortgage or equity of redemption. It was a sale of the land for the mortgage debt, and an application of the proceeds to its satisfaction. Such a sale could only be effectual by the actual or presumed surrender of the mortgage title. It was, therefore, determined that as the mortgagee directed and sanctioned the sale,-received the proceeds and did not object to or quash the sale, his conduct implied an admission of title in the mortgagor, and an abandonment of any inconsistent title in himself, “and preclude him in a Court of Equity from setting up the mortgage against the purchaser.” This case is essentially different. It is that of a lien- acquired not by mortgage, but by attachment in Chancery. In the case of Oldham vs Scrivener, (3 B. Mon. 580,) where Oldham and others had levied attachments in Chancery on Scrivener’s land, and afterwards Old-ham having obtained a judgment at law, caused an execution on his judgment to be levied on the land attached, purchased it himself and procured the Sheriff’s deed, it was held that the proceeding was not unauthorized or illegal because of the prior levy and pendency of the proceedings in Chancery. The Court say. *264 “thé legal title is not changed or divested out of th'e debtor by the penden'ey of the Chancery suit or the levy of the attachment, but an equitable control only over the subject has been acquired, which will enable the Chancellor to overreach any intermediate transfers of the property, so far as may be necessary to accomplish the objects of the' proceeding in his tribunal. The title still remains in the debtor, and may be sold or conveyed. The purchaser acquires the debtor’s title, stands in his place, subject as it was before in the debtor’s hands which had attached in favor of the complainants in the Chancery suits,” Same principle virtually settled in (3 B. Monroe, 133.)
A purchaser of property at a sale under execution, which is under attachment to satisfy the same debt, where the decree subjects it to the attachment debt, Should be re-imbursed out of the attached property to the extent of the payment made upon the execution.
So if a purchaser of attached property from the defendant even after suit, pay the price in discharge ofexecutions which are existing liens upon the attached property at the filing of the bill, and the property be decreed ip be sold, the purchasershould be indemnified by a repayment of his money before the attaching creditor is paid.
*264 With these authorities before us, it scarcely needs to' be said,- that Barclay and Ryan did not by reason of the' levy and sale, or by being present and bidding at the sale in the manner and under the circumstances .already detailed, waive any lien which they had previously acquired by their attachment in Chancery. They yet have a right, notwithstanding the proceedings at law, to a decree in Chancery to obtain satisfaction for the residue of their demands by a sale of the lands attached. But in tendering the decree, it seems to this Court,that there is error to the prejudice of both Beall and’ Sasseen. Beall by his purchase and payment of his money discharged of the complainant’s debts the sum of $620 63. Certainly he should not be required to-lose this money, but the decree ought to have protect-' ed him, and have caused him to be reimbursed to that extent.
The same is' true of Sasseen. Although his purchase was from Harrison, and not under execution, yet the largest portion of the price he paid for the land was ap>propriated to the discharge of executions against the estate of Harrison and in the hands of the Sheriff at and before the time of the commencement of the suit in Chancery. These executions had, therefore, a lien on Harrison’s property prior and superior to that of the complainants, and if they had not been'paid, would, necessarily, have- been preferred to the complainants*' *265 -demands. The decree should have protected Sasseen to the extent of the payments thus made by him to satisfy the said previous executions.
Where there are several purchasers of property of a mortgagor, each is bound to contribute proportionally to the satisfaction of the mortgage» (3 B. Monroe, 50; 8 lb. 314) So of purchasers of property on which there exists a lien by attachment in chancery. The value of the property at the date of the decree for sale is the proper period for ascertaining the liabilities.
We think the Court also erred in postponing the sale of that portion of the land purchased by Sasseen until after the land bought by Beall should have failed to pay the debt due to the complainants. The fact that his purchase was prior to that-of Beall, and that after his purchase a sufficiency of the land was probably left to satisfy the complainants’ demand, ought not to make any thing in his favor. Both purchases were made subject to the complainants lien in equity. The following principles applicable to this case have been heretofore recognized and settled by this Court. “A mortgage binds every part of the land it covers, and each spot is subject to its operation, and where it is made to bear on purchasers of different parcels froto the mortgagor, they are bound to contribute only in proportion to the value of the share that each holds:” (4 Monroe, 76.) “Slaves mortgaged and afterwards sold to different purchasers are all liable to the payment of the mortgage debt, but, as between the purchasers, equity will enforce contribution on principles of equality between them: (1 Lit. 319.) Same principle in 3 B. Monroe, 50, and in 8 B. Monroe, 314, and the numerous authorities cited in the last case. These were all cases of mortgages. We regard the principle as equally applicable to the equitable liens acquired by proceedings and attachment in Chancery. The Circuit Court should, therefore, have ascertained the respective value of the lands bought by Sasseen and by Barclay, the value to be fixed as of the time of rendering the decree, and from that value deduct the sums paid by the respective parties on executions for which they are enti-> tied to credit as herein before suggested, and then ac-according to the remaining estimated value, apportion the sum to be raised out of each part of the land. If by a decree, thus rendered, it shall turn out] that one defendant is divested of all his land, and the complainant’s debt still unpaid, they will have a right to subject *266 so much of the remaining portion in the hands of tire other defendant as may be necessary to pay the residue of their debt. Justice may be more readily done to all the parties by directing a sale of the land as herein indicated: first, to pay Beall and Sasseen, respectively, the amounts due them, as before suggested, and then to satisfy and discharge the debt to Barclay and Ryan.
The Chancellor should require land decreed to be sold to be definitely described.
J. 6f W. L. Harlan and N. E. Gray for Beall; Me-Laming and Stites for Sasseen; McKee Sf Stites and B. <$f A. Monroe for Barclay & Ryan.
In the decree now before us, the description of the land to be sold is some what vague and indefinite. That should be attended to in the subsequent decree.
For the errors suggested the decree is reversed both on the appeal of Beall, and the writ of error of Sasseen, and the cause is remanded to the Circuit Court for other and further proceedings not inconsistent with this opinion.