Landon, J.
—The finding that Joel B. Morehouse has never paid anything upon or by reason of the bid upon the foreclosure sale, is in accord with the evidence of Joel himself. The elaborate argument of the appellant in opposition to this finding, rests upon the fiction of a constructive payment for Joel by means of the payment of Talcott, when it is quite clear that it was the purpose of all parties that Talcott’s payment should be for himself and for the release of his-half of the farm, and not at all for the benefit of Joel or for the release of his half. If, by means of any mistake in figures, Talcott should bs credited with more than his half, which is not clear, he did not pay it for Joel’s benefit, did not intend to do so, and it would be an entire perversion of the undertaking of the parties to give it that effect now. Each was the devisee of an undivided half of the farm covered by the mortgage. They partitioned the farm between themselves ; procured plaintiff to foreclose the mortgage, each one agreeing to pay plaintiff upon the bid one half the amount due upon the mortgage with costs. The plaintiff could have held them as joint debtors, but, at their request, treated each as his separate debtor for the one half, and acted to his own prejudice upon that request, and has the right to treat them as estopped to insist that they are joint debtors.
Upon the trial, the testimony of Calvin Bake, then deceased, which he had given in an action in which one Tourtellot was plaintiff, and Nelson, Talcott and Joel B. Morehouse were defendants, was read, in evidence against the objection of Joel B.
The parties to this action were parties to that *414 action. The issues framed by the pleadings are not precisely the same, but, under the issues in each action, the point in issue touched by Bake’s testimony was the same, and in the former action must have been fatal to the main defense alleged, whereas in this action its force would have been entirely neutralized, if the payment alleged by the defendant Joel had been established. Where the parties are the same or in • privity, and the issues, or the point in issue the same, such evidence is admissible (Jackson ex. d. Barton v. Crissey, 3 Wend. 251; Osborn v. Bell, 5 Denio, 370; Lawson v. Jones, 61 How. Pr. 424; Clarke v. Vorce, 15 Wend. 193; Bradley v. Mirick, 91 N. Y. 293). When the parties are the same and the point in issue the same, we can clearly see that the party ^against whom the testimony is offered had the same opportunity and the same interest as now, to resort to every test to probe the witness and his testimony. And we see no reason, although the parties are not quite the same, if the subject matter to be now established is the same against the party against whom the. testimony is offered, as upon a former trial, and was of as much importance to that issue as it is to this, why the death of the witness should exclude his testimony. The party against whom it is now offered has once had his day in court in the very matter of developing that testimony, and that too under a pressure of interest as great as now exists, so nothing can be presumed to have been omitted from want of opportunity, care or interest.
In Philadelphia, &c. R. R. Co. v. Howard (13 How. U. S. 307, 335), the action was between Howard and the Philadelphia, W. & B. R. R. Co., as for covenant broken. There had been a former action between Howard and another, and the Wilmington & S. R. R. Co. as for assumpsit. The Wilmington and S. R. R. Co. and the Baltimore & P. B. Co., were subsequently *415 by the legislature, consolidated into the present defendant, the Philadelphia, &c. R. R. Co. The deposition of a witness, taken upon the same subject-matter in issue in this case, as in former, viz., whether a certain paper made by one of the constituent companies, was under its corporate seal or not, was held to be admissible. There the parties were not the same; one action was assumpsit, the other covenant. See also 1 Greenleaf Ev. § 164.
Upon principle and áuthoríty, we "think the evidence wras properly received.
The testimony of the plaintiff given upon the former trial of this action, was properly received under section 830, Code Civ. Pro. That section is remedial and should be liberally construed." It re nders competent:
1st. The testimony of a party given upon a former trial, in case such party has since died ;
2nd. The testimony given on the former trial of any person, who since then has become incompetent to be examined on this trial, by virtue of section 829.
Section 829 affects the competency of the witness to be now examined, but section 830 establishes the competency of his testimony given upon a former trial of the same case. A technical reading of the section which should make the death of a party the condition precedent to the competency of the testimony of any witness other than the deceased party, may possibly be made, but the spirit of the statute should prevail, and that gives competency to the testimony previously given in the casé, between the same parties, before the incompetency attached to the witness. Pennsylvania cases tend to show that this sensible rule exists at common law (Galbraith v. Zimmerman, 100 Penn. St. 374; Pratt v. Patterson, 81 Id. 114; Evans v. Reed, 78 Id. 415; Hay’s Appeal 91 Id. 265), and we think it should not be defeated by *416 an adherence to the letter in opposition to the spirit of the statute.
The objection of the statute of limitations was overruled upon the former appeal. The complaint states, that upon a foreclosure of the mortgage by advertisement, the mortgaged premises were struck off to Joel B. and Talcott Morehouse, and it characterizes that proceeding as a sale, bat it expressly shows that the sale was not completed by payment of the sum bid. So long as the sale remains incomplete by the refusal of the defendant to pay his part of the bid-, the plaintiff cannot be deprived, without his own consent, of the benefit of his mortgage. He cannot be compelled, against his consent, to waive a good security and take a cause of action as for a "simple debt against such a debtor.
No statute of limitations has run against his mortgage. The contention of the defendant that the mortgage could not be satisfied in effect as to Talcott’s share of the farm and be on foot upon Joel’s, rests upon no solid foundation.
It was Talcott’s duty to protect, by payment, his own share, under the understanding between Joel, Talcott and the plaintiff.
The judgment is right, and should be affirmed, with costs.
Peckham, J. concurs ; Bockes P. J. not sitting.
The following is the opinion on the first appeal.
Supreme Court, General Term;* Saratoga, September, 1882.
Learned, J.
J. —John Morehouse, deceaséd, by his will, proved about January 15, 1860, devised his farm *417 to liis sons, John B. and Talcott B., subject to his debts. They afterwards partitioned the farm between them, Joel B. becoming possessed of the southerly half, Talcott B. of the northerly, and they have ever since occupied as aforesaid. ' Their father was indebted to several persons, among them one Campbell, on a bond and mortgage upon the farm of $559.68. About April 8, 1861, at the request of these sons, and with the knowledge of the executors, plaintiff bought this mortgage with his own money. The object of the purchase was, that by a foreclosure and sale, JoelB. and Talcott B. might obtain title, thus avoiding any need of a surrogate’s sale. The executors of the deceased were John B. Morehouse and Talcott Morehouse.
The plaintiff foreclosed by advertisement, and sold, October 28, 1861, to Joel B. and Talcott B., for $2,200, the amount payable on the mortgage, and for costs, being at that date $737.41. It does not appear that any written contract of purchase was made. The plaintiff prepared the usual affidavits of sale, and retained them. Some time afterward, and it would seem about January, 1864, he delivered them in escrow to Mr. Dake, to be delivered when the amount of the bid should be fully paid. On April 14,1868, these affidavits were recorded, without plaintiff’s knowledge, and he did not know of such record until 1872 or 1873. The plaintiff now insists that the whole bid has not been paid ; that while Talcott B. has paid his half, or $1,100, Joel B. has not paid his. He asks a cancellation of the record of the affidavits, and that he may be allowed to foreclose, not, however,' affecting thereby the part owned by Talcott B.
It will be seen that there would have been a surplus of about $1,480, which would belong to the estate of the deceased. The personal property had been distributed by the executors to the sons, and the sons had severally bought up claims owing by their father. *418 After the foreclosure it was computed that such surplus and other funds would pay twenty-eight and three-quarters per cent, on the debts of the deceased. The executors therefore gave an order on plaintiff to pay Joel B. and Talcott B. twenty-eight and three-quarters per cent, of the claims which they held, such percentage amounting to $640.82.
On January 13, 1863, the plaintiff, Joel B. and Talcott B. met. Talcott’s percentage, on his father’s account, amounted to $434.51. He presented an order from one of the executors that plaintiff should accept a certain note of $449.60 as money, and he paid $215.80, making up the $1,100. Talcott B. also paid $33.20 for interest'on his half of the plaintiff’s mortgage debt, probably computing from the day of sale to that date. Plaintiff gave Talcott B. a receipt.
The percentage of Joel B. was $206.31, as the plaintiff testifies, and Joel B. held a note against plaintiff for $600: The plaintiff claims that Joel B. was to apply that- note on the bid, but such application was not made, and the plaintiff subsequently paid the note, and the defendant, Joel B., testifies that he has paid nothing on the bid.
How, while we may assume that the creditors of the deceased have been paid, and that since they have been paid, the surplus on the sale equitably belonged to Joel B. and Talcott B., yet clearly the plaintiff was entitled, out of the bid, to receive in full the mortgage, debt and the costs. We do not see that this has ever, been received. The mortgage debt and costs amounted,
October 28, 1861, to.....$799 81
Interest to January 13, 1863, . . . 62 28
Admitting even that the note of $449.69 was to be taken by plaintiff as cash on his own account, we have the following paid as of ' January 13, 1863:
*419 Talcott B., check, „ . $215 80
Note, . . ... 449 69
Interest paid by Talcott B., . 33 20
$698 69 $861 59
In making this statement we pass over the question as to the note of $449.69. This was a note of John B. Morehouse, one of the executors, owned by Talcott B., which the plaintiff says he accepted on the order from the executors that he would accept it on the hid. If this be so, that note would be rather a part of the surplus which was to come to the estate, than a part of the plaintiff’s share of the bid. It does not seem ' to be clear who in the end received the amount of that note. It was sued in the name of one Dake. It seems to us, then, that the plaintiff has nob been paid the bid in full. The learned justice held that he had been so paid ; and further, that if he had not been paid, his right of action was barred by the lapse of six years.
We must here notice that Joel B. and Talcott B. liad title and possession, under the devise before the sale ; Joel B. has parted with nothing on the credit of these foreclosure affidavits. To the extent of the value of his half of the real estate, at least, he was liable for the debts of his father.
Again, the affidavits were never delivered by the plaintiff to take effect. They were only put in escrow; they were not put in the hands of the grantee. The recording of the affidavits, making an apparent delivery, was a fraud upon the plaintiff.
The written contract "of a sale is alleged to have been executed. The affidavits must then be the writing by which the title to land is transferred. And since they were not delivered no valid agreement for sale is in existence. The defendants stand, at the best, *420 as having made a particular payment on a verbal contract of sale, but not as having taken possession by virtue thereof. The attempted sale having been ineffectual, the lien of the mortgage remains (Stackpole v. Robbins, 47 Barb. 212).
The plaintiff admits, and the defendant Joel B. testifies, that Talcott B. has paid his half of the bid, and, as he is the owner of half of the land, it is just and equitable that the plaintiff should treat the half of Talcott B. as having paid its half of the mortgagee’s debt, and therefore as free therefrom. There is nothing, therefore, inconsistent in the plaintiff’s demand that the balance remaining payable to him should be collected out of the half of Joel B., if Joel B. has not paid his share.
The defendant, Joel B., sets up the six years’ statute of limitations. In the view above taken, that statute does not apply. The mortgage remains unpaid and there has been no valid contract of sale under it. The plaintiff, therefore, does not sue to recover unpaid purchase money of the sale.
Take this as an action on the ground of fraud, and (Old Code, §91, subd. 6; New Code, §382, subd. 5) the plaintiff discovered the fraud not before 1872. This action was commenced in March, 1874.
Or again, under Old Code, § 97, New Code, § 388, the statute of limitations is still further from any application of the case.
Again, let us suppose, as the defendant states, that after the affidavits were recorded, April 14, 1868, he told the plaintiff, and the plaintiff made no objection, and assume that this failure to object may be considered as a consent to the delivery, then such consent could not have taken effect before April 14, 1868, and six years would not have expired when the action was commenced. If, then, the plaintiff did ratify the delivery, then the defendant is liable to pay the bal *421 anee remaining unpaid. Whether or not the plaintiff did thus ratify the acts of Bake is a point not decided, and therefore we merely consider the question of the statute of limitations in that contingency. In that case it may be that the plaintiff will be entitled .to the usual vendor’s lien.
We think that the judgment should be reversed and a new trial granted, costs to abide the event.*
Note on Testimony of Deceased Witness.
Testimony given by the party himself as a witness stands on a different principle. Testimony given by a party himself in a trial in another action, may be read against him so far as pertinent to the issue, and so far will be competent evidence against him of the facts stated, but for no other purpose. Ct. of App., 1879, N. Y. Guaranty, &c. Co. v. Gleason, 7 Abb. N. C. 334; S. C., 78 N. Y. 503.
Former trial.] The fact that the jury on the previous trial disagreed, does not take the case out of the rule ; there was, notwithstanding, a trial within meaning of the statute. The trial is concluded when the case is closed and submitted to the jury. Lawson v. Jones, 61 How. Pr. 424; abst. S. C., 12 Weekly Dig. 551.
The deposition of a witness taken at the inquest before the coroner is admissible on the trial in behalf of the accused ; the witness having died since the inquest. La. Supreme Ct., State v. McNeil, 6 Va. L. J. 297; citing Bishop’s statement of the common law founded on the statute of Philip & Mary in the case of coroners, depositions talcen by whom are allowable without evidence that the accused had the opportunity of cross-examining them. Mr. Bishop says: “ The principle on which these depositions are, under statutes like those which prevailed in England down to a recent period, admissible, is, that being regularly taken under provisions of law, the common law accepts them when it is impossible the personal presence of the witness can be had. 1 Bish, on Crim. Proc. § 1096; citing Rex v. Smith, 2 Stark. 208, 211.
Preliminaries to admission.] A party examined on a previous trial, and thereafter rendered incompetent to testify by the death of his adversary before the second trial, may have his own testimony which was taken on the previous trial read at the subsequent trial; it is not necessary that testimony of the deceased party be first offered in evidence. Lawson v. Jones, 61 How. Pr. 424; abst. S. C., 12 Weekly Dig. 551.
*422 Omission, of cross-examination.] A. failure to cross-examine, when there is power and opportunity so to do, does not prevent the introduction of witness’ testimony in a subsequent action between the same parties or their personal representatives. [Citing Forrest v. Kissam, 7 Hill, 463; rev’g 25 Wend. 651; People v. Cole, 43 N. Y. 508; aff’g 2 Lans. 370; 1 Greenl. Ev. § 163; Mayor of Doncaster v. Day, 3 Taunt. 262; Glass v. Beach, 5 Vt. 172; Lightner v. Wike, 4 S. & R. 203; distinguishing Sheridan v. Smith, 2 Hill, 538.] Supm. Ct., 1881, Bradley a. Mirick, 25 Hun, 272; aff’d in 91 N. Y. 293.
Mode of proving.] The testimony can be read by a stenographer from his notes taken at the trial. N. Y. Com. Pl., 1881, Lawson v. Jones, 61 How, Pr. 424; abstr. S. C., 12 Weekly Dig. 551.
The case of the death of a witness who testified in the former trial Constitutes an exception to the rule requiring witness to be confronted with the prisoner before the trial jury—an exception recognized on the ground of necessity to prevent a failure of justice. The practice is subject to the objection that a living witness might not be credited when the written testimony might, and when admitted, the utmost precaution should be taken to place it before the jury as nearly as possible as the witness if living would have done. There must, therefore, bo proof that minutes of the testimony offered to bo read arc correct. It is not enough that the stenographer who took the notes, on being asked if he would tell the jury what the witness said on direct and cross-examination, and the whole of it, answered: “ I cannot do it without I can read it from my notes taken on that trial,’’ and that he thereupon proceeded to read ths notes without further testimony to their accuracy. People v. Sligh, 48 Mich. 54; S. C., 11 Northw. Rep. 782.
The testimony of a witness since deceased, taken on the preliminary examination of the defendant before a magistrate, and by him committed to writing at the time, though not signed by the witness, is competent evidence against the defendant on his trial, on proof by the magistrate that it was correctly taken under the direction of the witness and in his words. For the death of the witness makes it competent to prove his statements before the committing magistrate by any witness who heard them. Wharton’s Cr. Ev. 227; Horton v. State, 53 Ala. 488; Davis v. State, 17 Id. 354; Roberts v. State, 68 Id. 515.
The short-hand notes of a reporter taken on the preliminary examination in a criminal case of the testimony of a witness who died after such examination and before trial, though supported by the testimony of the reporter that his notes correctly represented the testimony of the witnesses on that occasion, is not admissible. To render testimony on a preliminary examination admissible under [Cal.] Penal Code, § S69, *423 contemplating testimony written out, certified and filed by the reporter these formalities must be complied with, and resort cannot be had to the memory of those who heard it. People v. Cunningham (Cal. 1884), 4 Pac. Rep. 1144.
Whatever may have been the doctrine formerly held, it now seems well settled that the person called to prove what a deceased witness testified on a former trial, is not required to repeat the precise words of such witness, but it is sufficient if the witness is able to state the substance of what was sworn on the former trial. [Citing 1 Greenl. Ev. 165; Black v. State, 1 Texas Ct. App. 368; Dunlap v. State, 9 Id. 179.] Simis v. State, 10 Texas Ct. App. 131, 166; reiterated in Avery v. State, Id. 199. S. P., State v. Fitzgerald, 63 Iowa, 268; S. C., 19 Northwestern Rep. 202.
An examination of a prisoner taken before a committing magistrate, who testifies positively that he either read it to him, or that it was road to him by the clerk, that being the uniform custom of the court, is properly admitted in evidence. Supm. Ct., 1875, Godfrey v. People, 5 IIun, 369.
If such minutes, when otherwise incompetent, are admissible as impeaching evidence, where the witness has been called on the second trial and testified, his attention must be called to them, that he may have opportunity to explain before they can be received to contradict him.
Mere absence of witness.] In criminal cases, the testimony of a witness given at the coroner’s inquest is not rendered admissible on the trial by the fact that the witness had gone beyond the jurisdiction and process of the court, and voluntary attendance could not be procured. The rule allowed in civil cases (1 Tayl. Ev. § 472), is not applicable in criminal cases. Crite v. Commonwealth, 12 Reporter, 575; S. C., 5 Va. Law Journ. 568; 16 West. Jurist, 38.
The reason of the rule is the constitutional right to be confronted with witnesses. Hence it ought not to be extended (without statutory expression) to preclude the prisoner from offering in his own behalf the certified testimony of witnesses before the coroner, on showing that they cannot be found, and are reported to be outside the jurisdiction. Ryan v. Commonwealth, 9 Va. Law Journal, 607, 621; commented on in 10 Id. 70.
This decision was subsequently disclaimed by the court, this point not being passed on in the official report. See 10 Va. L. J. 255 April, 1886.
The written statement of the testimony of a witness examimed before a coroner, and by him reduced to writing on an inquest held by him over the body of the deceased, is not competent evidence for a *424 defendant on trial for murder, on proof that the witness had removed from the state. Sylvester v. State, 71 Ala. 17.
The testimony of a witness, before a committing court, taken and written down in the presence of the defendant and his counsel, and sworn to and subscribed by the witness, may be read as evidence against the defendant, on the trial in the circuit court, where the witness is not a resident of the State, and his personal attendance in court cannot be enforced. (Eakin, J., dissenting.) Dolan v. State, 40 Ark. 454, following Shackelford v. State, 33 Ark. 539.
The fact that a material witness, a few days before the trial, went and still is temporarily beyond the limits of the State, constitutes no foundation for the introduction of .the testimony given by him at the previous trial. Cooper v. State, 7 Tex. App. 194.
The written testimony of a witness taken before an examining court, properly certified by the magistrate, is admissible for the State when the prosecuting attorney has laid the proper predicate by showing that, when the absent witness was .examined, the defendant was present, and was afforded the privilege of cross-examination, and that, since the witness was examined, he has removed beyond the jurisdiction of the court. Garcia v. State, 12 Tex. App. 335. Citing Texas Code Crim. Pro. art. 774, and Texas cases.
Under the North Carolina statute authorizing testimony to be admitted against the prisoner under specified circumstances, the right of the prisoner to offer it in his own behalf is to be defined in the same way. State v. King, 86 N. C. 603.
Proof of mere disappearance in not enough to admit the testimony of the witness, lb.; Harris v. State, 73 Ala. 495.
Where a witness who testified at the preliminary examination of the defendant upon the same charge is living,- but has gone out of and beyond the jurisdiction of the court, evidence of what he said on the former trial is inadmissible in a criminal prosecution. U. S. Cir. Ct. (D. of N. H. 1881), United States v. Angell, 11 Fed. Rep. 34, 42 (well considered).
The constitutional guaranty that the accused shall enjoy the right to be confronted with the witnesses against him (Const. U. S. Amend, art. VI.), is without exception, and if the accused -has this right it must be mutual, and exist on the part of the government, holding it not error to exclude the testimony, even though the witness was beyond the jurisdiction of. the United States, lb. See also note in 8 Am. Dec. 716; 65 Id. 676, where the cases are reviewed. -

 Present, Learned and Westbrook, JJ,

 To same effect see Russell v. Russell, 50 Barb. 445.