Judgment modified in accordance with opinion. Order for modification to be settled by DWIGHT, J.

------

IN THE MATTER OF THE PROBATE OF THE WILL OF MILTON BUDLONG, DECEASED.

*Contested will — competency of declarations of proponents — of letters written under the direction of the testator — of testimony by a disinterested witness who subsequently becomes interested — burden of proof as to unreasonable provisions of the will — motion for judgment on the verdict.*

Upon an appeal from a judgment in favor of the contestants, in proceedings for the admission to probate of the will of Milton Budlong, it appeared that the said will had been admitted to probate by a decree of a surrogate; that, upon an appeal to this court, the decree was reversed and an order was made for a trial, by a jury at circuit, of the issues as to whether Budlong was, at the time of the execution of the instrument, of sound and disposing mind and memory, and whether it was procured to be executed by fraud or undue influence and deceit practiced by Isaac Budlong or other proponents or persons.

Upon the second trial exceptions were taken to the admissions of certain declarations of several of the proponents, who were charged with the acts and representations which constituted the undue influence and deceit said to have been practiced upon the testator. None of the declarations objected to and received were in the nature of admissions by the several declarants of those acts charged against them, but were rather declarations made by them during the course of the transactions and events which led up to the result complained of.

*Held,* that as they either constituted a part of the *res gestæ,* or demonstrated the attitude of the proponents towards the contestants, that it was not necessary to establish an actual conspiracy between the actors in order to make their several declarations, of the character described, admissible in evidence.

A large portion of the evidence received under this class of exceptions consisted of oral and written communications of the brothers, the proponents of the will, and especially of Isaac, the oldest and most influential of them, with Mrs. Cole, the principal contestant, during a period of several years, from the time of her marriage down to the date of the will.

*Held,* that these communications were admissible upon the grounds above stated.

Letters written by the step-mother, as the amanuensis, or under the direction of the testator, to the contestant, Mrs. Cole, were received in evidence, under the objection of the proponents that they were within the provisions of section 829 of the Code of Civil Procedure.

*Held,* that the objections were not well taken, as the communications were not personal between the deceased and the contestant, Mrs. Cole, but were made to the wife of the deceased, to be transmitted by her to such contestant.

On the trial before the surrogate the husband of the contestant, Mrs. Cole, testified as a witness on behalf of the contestant in relation to the personal directions and communications between himself and the deceased. After the trial before the surrogate, and before the trial at the circuit, Mrs. Cole died, and on the latter trial the minutes of the former testimony of her husband were read by the contestants under objection.

*Held,* that a claim made by the proponents that while the witness was competent to testify on the first trial while his wife was living, that by the death of his wife he became interested in the result of the action, and consequently his testimony was inadmissible, could not be maintained as that contention was fully answered by section 830 of the Code of Civil Procedure.

The court charged the jury that "if, under all the circumstances of the case, you find that this will was unnatural in its provisions and inconsistent with the duties and obligations of the testator to the different members of his family, it imposes upon the proponents the duty of giving some reasonable explanation of its unnatural character, or at least of showing that it was not the result of mental defect, obliquity or perversion."

*Held,* that the charge was, in effect, that if the jury should find that the will was contrary to the dictates of natural affection, of justice and of duty, that it would be, to that extent, evidence of mental defect, obliquity or perversion of mind which would require evidence to rebut or explain, and that the proposition charged was entirely sound.

After a motion for a new trial had been made by the proponents at the circuit and denied, a motion was made by the contestants at Special Term, and granted, for judgment on the verdict of the jury, and thereupon a judgment of the Supreme Court was entered accordingly.

*Held,* that whether that practice was correct or not the question could not be entertained in this case, as it was shown by the order of the Special Term that the proponent expressly submitted to and conceded the jurisdiction of that court to hear and determine the motion for judgment and for costs.

APPEAL by the proponents from a judgment recovered at the Monroe Circuit, which was entered in the office of the clerk of Monroe county on the 2d day of January, 1889, adjudging that an instrument propounded as the will of Milton Budlong, deceased, was void and of no effect; and also from an order of the Circuit Court and Special Term made on the 29th day of March, 1888, denying a motion for a new trial on the minutes on behalf of the proponents, and entered on the 28th day of February, 1889; also from an order granted on the 28th day of November, 1888, and filed and entered in said clerk's office on December 28, 1888, granting a motion for judgment on the verdict and from each and every part of said orders.

*J. A. Stull,* for the proponents, appellants.

*E. A. Nash,* for the contestants, respondents.

DWIGHT, J.:

A decree of the surrogate of Monroe county, in December, 1883, admitted the will to probate. On appeal to this court, in June, 1887, that decree was reversed and an order was made for a trial by jury, at the Monroe Circuit, of the following issues:

*First.* Was Milton Budlong, at the time of the execution of the instrument in question, of sound and disposing mind and memory?

*Second.* Was the same procured to be executed by fraud, circumvention, undue influence and deceit, practiced upon him by Isaac Budlong, or the other proponents of the will, or persons acting in their behalf, while there was a loss of natural affection by the decedent for his daughter Mrs. Cole, occasioned by the falsehoods, fraud, deceit and evil practices of proponents, perpetrated on him for the purpose of unduly prejudicing him against her?

On the trial had, as prescribed by such order, in March, 1888, the questions so propounded were both answered in the affirmative.

At the same time a motion was made by the proponents for a new trial on the judge's minutes, which was denied; and in November following a motion was made by the contestants, at a Special Term, held by the same judge before whom the issues were tried, for judgment on the verdict. On the hearing of that motion, counsel for the proponents appearing and expressly consenting to the jurisdiction of the court to hear and determine the same, an order was made for judgment accordingly, and judgment was thereupon entered in favor of the contestants, that the instrument propounded as the will of Milton Budlong, deceased, was void and of no effect, and requiring the surrogate of Monroe county to annul the record and probate thereof. The proponent's appeal from the judgment and from the order at the circuit denying their motion for a new trial brings the case a second time before this court. When it was here before, on appeal from the decree of the surrogate, admitting the will to probate, this court, upon testimony substantially the same, and in large part identical with that adduced before the jury, were led "to doubt the correctness of the surrogate's conclusion upon the question of deception and undue influence," by which, as it was alleged, the will was procured to be executed; and accordingly reversed the decree of the surrogate and directed that the issues, which were thereupon framed by the court, as stated above, should be tried by a jury at the circuit.

The evidence upon which this decision was reached was reviewed at much length in the opinion of the court as then pronounced by Mr. Justice Haight, and it seems to have been, in all material respects, similar to that which was given on the trial before the jury; indeed, to a large extent, it constituted the evidence which was adduced on the latter trial, being read from the minutes of testimony given before the surrogate. A very careful perusal of the whole evidence in the record before us fails to show that there was any additional or different evidence given on the last trial which would require a different conclusion from that reached by the court on the former review, and none is pointed out in the very elaborate brief and argument of counsel for the proponents. We find ourselves concluded, therefore, by the former judgment of this court, to the extent of holding that the case was one which ought to be submitted to a jury for its decision upon the issues proposed; and that a finding in

favor of the contestants upon either of those issues, if not vitiated by error on the trial, must, so far as the judgment of this court is concerned, be conclusive against the probate of the will in question.

We are brought, therefore, to the inquiry whether any exception of the proponents taken on the trial points to error in the admission or exclusion of evidence, or in the instructions to the jury under which the issues were submitted for decision. A numerous class of the exceptions found in the case relate to the admission of certain declarations of the several proponents who are charged with the acts and representations which constitute the undue influence and deceit said to have been practiced upon the testator. It is to be noticed that none of the declarations objected to and received are in the nature of admissions by the several declarants of those acts charged against them, but are, rather, declarations made by them during the course of the transactions and events which led up to the result complained of, and which either constituted a part of the *res gestæ*, or demonstrated the attitude of the proponents towards the contestant in relation to the subject-matter of the inquiry, and the intent with which each performed the acts attributed to him. This being the case, it was not necessary to establish an actual conspiracy between the actors in order to make their several declarations, of the character described, admissible in evidence. Such declarations come within the rule well stated by Judge REDFIELD, as follows: "There can be no question that where those opposing the probate place their case upon the theory that the testator was made the dupe of a conspiracy, *or of undue influence in any form*, it is competent to show the declarations of the agents in such alleged imposition, made in connection with their acts, as important and essential, if not indispensable in the transaction or *res gestæ*, without which it would be impossible to place the case before the jury in any intelligent form" (1 Redf. on Wills [4th ed.], 572); or, as was said by BRADFORD, Surrogate, in *Brush* v. *Holland* (3 Bradf. Sur., 240, 243), "when a party is accused of having effectuated a certain act by undue means, if the facts show an opportunity for the accomplishment, I cannot say that the predisposition of the party to produce that precise result is immaterial, or that his declarations evincing his intention are incompetent evidence."

A large share of the evidence received under this class of excep-

tions consisted of oral and written communications of the brothers, the proponents of the will, and especially of Isaac, the oldest and most influential of them, with Mrs. Cole, the principal contestant, during a period of several years, from the time of her marriage down to the date of the will. These communications were, no doubt, admissible under the principles above indicated. The letters of Isaac, for example, are luminous with evidence of his feeling towards his youngest sister and her husband, and of his disposition to influence the feeling and conduct of his father towards them.

Letters written by the step-mother, as the amanuensis or under the direction of the testator, to Mrs. Cole, were received in evidence under the objection of the proponents that they were within the exclusion of section 829 of the Code of Civil Procedure. The objection was not well taken. The communications were not personal between the deceased and the contestant; they were made to the wife of the deceased to be transmitted by her to the contestant. The directions from the deceased to his wife to write, and what to write, were testified to by the widow and not by the contestant, while the latter merely produced the letters and identified them as those received from her step-mother.

On the trial before the surrogate, the husband of the contestant, Mrs. Cole, testified as a witness, in behalf of the contestant, in relation to personal transactions and communications between himself and the deceased. After that trial and before the trial at the circuit, Mrs. Cole died. On the latter trial the minutes of the former testimony of her husband were read by the contestants under objection. Counsel for the proponents concede that the testimony was competent on the first trial, while the wife of the witness was living, but contend that by the death of his wife he became interested in the result of the action and, therefore, incompetent to testify to the matters referred to. The objection is fully answered by section 830 of the Code, which provides that "where a party has died since the trial of an action, or the hearing upon the merits of a special proceeding, the testimony of decedent, *or of any person who is rendered incompetent by the provisions of the last section* (§ 829) taken or read in evidence at the former trial or hearing may be given or read in evidence at a new trial or hearing by either party subject to any other legal objection," etc. The

provision would have been more clearly expressed if the portion italicized had read " or of any person rendered incompetent thereby (*i. e.*, by such death) under the provisions of the last section," but such is the evident meaning and effect of the provision. Under it the testimony of Cole, competent when it was given, on the first trial, was properly received in evidence on the second trial, notwithstanding that he had in the meantime been rendered incompetent to give such testimony by the death of his wife. The provision, though new to the Code in 1879, was not then new to the law of evidence. (*McKnight's Admr.* v. *Lewis*, 5 Barb., 681, 685, and the cases cited; *Morehouse* v. *Morehouse*, 17 Abb. N. C., 407, 415; *Lawson* v. *Jones*, 1 N. Y. Civ. Pro. R., 247 *Comins* v. *Hetfield*, 80 N. Y., 261; *Galbraith* v. *Zimmerman*, 100 Penn. St., 374; *Pratt* v. *Patterson*, 81 id., 114.) The rule at common law, as exhibited by the cases cited, is much more general than that embraced in the section of the Code above cited and rests upon the evident principle that the interest which disqualifies testimony must exist at the time the testimony is given.

The charge of the court contained a very clear and correct exposition of the legal principles which should govern the jury in their consideration of the case; and, so far as the evidence was referred to, a very impartial statement of its character and possible effect. The proponent's requests to charge were mostly granted, and when they were declined, except as charged, we think the court had already covered the propositions as far as the proponents were entitled to have them stated. None of the exceptions to the charge seem to us to have been well taken.

The submission to the jury of the question whether the letter of Levi written to his sister, Mrs. Hunt, and which he, in effect, requested her to show or read to his father, was written for the purpose of influencing the latter in making his will, was, we think, warranted by the evidence. The character of the letter itself, the suggestion that it be read or shown to his father, together with the evidence, by his own declarations, of his feeling towards his sister, and particularly in respect to her sharing in his father's estate, was such as would not have justified the court in withholding that question from the jury. It was very cautiously submitted, and in terms

quite as favorable to the proponents as the character of the evidence required.

The submission of the question of conspiracy was made with sole reference to the effect of the evidence of the declarations of the several proponents, the court properly instructing the jury that the fact of conspiracy was not necessary to the finding of undue influence. We think that the evidence was such as would have warranted the finding that there was a common purpose, on the part of two or more of the proponents, to procure the exclusion of Mrs. Cole from her father's bounty by improper means. But we have already indicated our opinion that most, if not all, of the evidence in question was properly received upon grounds which did not involve the existence of a conspiracy. So that, as we think, the charge of the court in respect to the effect to be given to that evidence was even more favorable to the proponents than they were entitled to ask.

The court charged the jury that " if, under all the circumstances of the case, you find that this will was unnatural in its provisions and inconsistent with the duties and obligations of the testator to the different members of his family, it imposes upon the proponents the duty of giving some reasonable explanation of its unnatural character, or at least of showing that it was not the result of mental defect, obliquity or perversion." The instruction is not if the jury should regard the will as unnatural, etc., abstractly considered, or on the face of its provisions, but that if they should find it to be so under all the circumstances of the case; that is, upon all the proofs which they accept as establishing the truth of the case. The charge was, in effect, that if the jury shall find evidence that the will was contrary to the dictates of natural affection, of justice and of duty, that will be, so far, evidence of mental defect, obliquity or perversion of mind which will require evidence to rebut or explain it. The proposition seems to be entirely sound. It does not necessarily involve any shifting of the burden of proof, but only declares that certain circumstances are presumptive evidence of certain facts. Judge REDFIELD in his treatise (p. 537) goes so far as to say : "But gross inequality in the dispositions of the instrument, when no reason for it is suggested either in the will or otherwise, may change the burden and require explanation on the part of those who support the will to induce the belief that it was the free and deliberate act of a rational, self-poised and clearly disposing mind."

The appellants here question the practice by which, after a motion for a new trial made by them at the circuit and denied, a motion was made by the contestants at Special Term, and granted, for judgment on the verdict of the jury, and thereupon a judgment of the Supreme Court was entered accordingly. The practice seems not to be entirely settled. (*Marvin* v. *Marvin*, 4 Keyes, 9 ; *Matter of Hatten*, 22 Abb. N. C., 66 ; *Matter of Campbell*, 48 Hun, 417.) The statute (Code of Civil Pro., § 2588) is silent as to the court to which the application for judgment on the verdict shall be made. The section cited does provide, by reference to section 2548, that a motion for a new trial after such verdict may be made either in the Surrogate's Court, in the court in which the trial was had or, in case the trial was had at the circuit, in the Supreme Court, by which, no doubt, is intended the Special Term ; and it would seem to be fairly inferable that the motion for judgment might also be made in either of those courts. But, whatever may be the correct or the better practice, the question cannot be entertained in this case, since the proponents here, as is shown by the order of the Special Term, expressly submitted to and conceded the jurisdiction of that court to hear and determine the motion for judgment and for costs.

We find no other question presented by the brief or argument of counsel, and are of the opinion that the judgment and order appealed from should be affirmed, with costs to the respondents payable out of the estate.

BARKER, P. J., and CHILDS, J., concurred.

Judgment affirmed, with costs to the respondents to be paid out of the estate.