## ED`EXLETON v. STATE.

No. A-4588.   Opinion Filed May 2, 1925.
(235 Pac. 627.)

(Syllabus.)

1.   **Trial—Right to be Confronted with Witnesses—Transcript of Evidence of Witnesses at Preliminary Hearing.**   Where an accused at a preliminary hearing had been confronted by a witness against him and had the privilege of cross-examination, if it satisfactorily appears, upon a subsequent trial involving the same issue, that for any of the reasons recognized by the law, the oral testimony of the witness is not available, the admission of a transcript of the evidence taken at the preliminary is not in violation of the constitutional right of the accused to be confronted with the witnesses against him.

2.   **Evidence—On Refusal of Witness to Testify for Reason That Testimony Will Tend to Incriminate Him, Former Testimony Given at Preliminary Trial Admissible.**   Where in a criminal case a witness for the state has voluntarily testified at a preliminary trial, and an opportunity for cross-examination offered the accused, and at the final trial such witness is again offered by the state, but refuses to testify for the reason that such testimony will tend to incriminate him, his former testimony given at the preliminary, otherwise competent and material, is admissible.

3. **Same—Transcript of Evidence Taken at Preliminary Trial Need Not be Filed with Court Clerk to be Admissible.** It is not an essential prerequisite that a transcript of the evidence taken at a preliminary trial be filed with the court clerk in order to render it admissible in evidence, when otherwise competent and material.

4. **Trial—Refusal to Permit Interview with State's Witness, Imprisoned in Jail—Discretion of Court.** In a criminal case it is ordinarily discretionary with the trial court whether he will make an order giving counsel for an accused the right to interview a state's witness, incarcerated in jail, and a refusal of an interview will not be error, unless an abuse of discretion is shown.

5. **Same—Denial of Interview of Accused's Accomplice, Whose Testimony at Preliminary Hearing Was Used at Trial, Held Error.** Where an accomplice of an accused is incarcerated in jail as a witness for the state and his evidence taken at a former hearing is used against the accused on the trial of the case, the accused is entitled to a reasonable opportunity to interview such accomplice and a denial of an opportunity to do so is error.

Appeal from District Court, McClain County; W. L. Eagleton, Judge.

Ed Exleton was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

Moman Pruiett, C. G. Moore, and Glasco & Glasco, for plaintiff in error.

George F. Short, Atty Gen., and Charles Hill Johns, Asst. Atty. Gen., for the State.

EDWARDS, J. For convenience and brevity, the plaintiff in error will be referred to as defendant, as in the court below.

The defendant was charged with murder of one E. L. Trimble on the 27th day of August, 1921. He was convicted of manslaughter in the first degree and sentenced to serve a term of 8 years in the state penitentiary. The homicide on which the charge was based, as disclosed by the record, is about as follows: On the morning of August 28, 1921, the train crew on the south-bound Santa Fe, out

of Purcell, discovered a body on the track, but too late to stop the train and the body was severed near the middle. On examination a bullet wound was found which had severed the aorta and caused death. One Jesse Waters and the defendant were arrested. The defendant ran a hotel at Purcell, and the mother of Waters was an employee there. Waters was about 19 years of age, and was tried a few days before the defendant and was convicted and sentenced to serve a term of 12 years in the penitentiary. At the preliminary hearing of the defendant, Waters was called as a witness for the state and was examined and cross-examined fully by counsel for defendant. His testimony was that he shot and killed the deceased at the solicitation and on the advice and direction of the defendant.

Upon the final trial of the defendant, Waters was again put on the stand by the state, and when asked a preliminary question said, "If I testified in this case, it would be different than what I did before," and on the question being repeated said, "I said my case is still pending. I cannot testify because it would be different from what I did before." Then one of the attorneys for Waters asked permission of the court to inform him of his rights if his testimony might incriminate him. The court then informed the witness of his rights, and witness stated that he claimed this right. The court, after argument, ruled that the witness was competent and ordered him to testify, and he did thereupon answer several questions of a preliminary character, and thereupon the counsel for defendant requested the court's permission to confer with the witness, which was denied by the court, then counsel for the witness Waters requested permission of the court to confer with the witness in private, which was allowed by the court. After the consultation Waters was again placed on the stand and refused to testify further, although ordered to do so by the court. On this latter questioning of the witness Waters, the counsel for defendant objected.

Upon the refusal of Waters to testify further, the state offered a transcript of his evidence taken in the preliminary of the defendant, which when identified and its correctness established was admitted in evidence. The defendant objected on the ground that it was not admissible as the witness was present in court, and on the further ground that the transcript had not been filed with the clerk of court as provided by statute, which objections were overruled and the former evidence read to the jury.

In the brief of defendant only three propositions are argued. First: That the court erred in admitting in evidence the transcript of the testimony of the witness Waters given on the preliminary examination; second, that the court erred in refusing to permit counsel for defendant to interview the witness Waters before the preliminary commenced and again before the case had closed; third, that the court erred in not directing a verdict for defendant on the ground that the witness Waters was an accomplice and his testimony not sufficiently corroborated. These assignments of error will be considered in the order presented. Section 20 of Bill of Rights of the state Constitution provides that the accused in a criminal case shall have the right to be confronted by the witnesses against him. Those sections of the statute which have a bearing on the legal questions presented are section 2345, Comp. St. 1921, as follows:

"The procedure, practice and pleadings in the courts of record of this state, in criminal actions or in matters of criminal nature, not specifically provided for in this code, shall be in accordance with the procedure, practice and pleadings of the common law"

—and section 2491, Comp. St. 1921, referring to preliminary examinations, in part, as follows:

"* * * On the request of the county attorney, or the defendant, all the testimony must be reduced to writing in the form of questions and answers and signed by the wit-

nesses, * * * and * * * filed with the clerk of the district court, by the examining magistrate. * * *"

The general rule sustains the view that under the Constitution and this or similar statutes where an accused has once been confronted with a witness who testifies against him, and had the right to cross-examine, the admission of such testimony in a subsequent trial of the same issue where the witness has died, become insane, or is sick or unable to testify, or his presence cannot be had, is not a violation of the constitutional right of the accused. Davis v. State, 20 Okla. Cr. 203, 201 P. 1001; Golden v. State, 23 Okla. Cr. 243, 214 P. 946; Hawkins v. United States, 3 Okla. Cr. 652, 108 P. 561; Smith v. State, 147 Ga. 689, 95 S. E. 281, 15 A. L. R. 490; Underhill Crim. Ev. § 265.

There is an exhaustive note on this point to the case of State v. Hefferman, 22 S. D. 513, 118 N. W. 1027, 25 L. R. A. (N. S.) 868, and also an exhaustive note to the case of Blackwell et al. v. State (Fla.) 15 A. L. R. 465.

In the instant case the unusual situation is presented of a witness who at the preliminary trial voluntarily testified for the state, now declining to testify on the ground that his evidence will incriminate him. At the time of the final trial of this case, the witness had been tried for the same offense for which the defendant was on trial and had been convicted, and the time within which he might appeal had not expired. There is no question about the good faith of the state in desiring to have him testify orally. The claim of exemption was not due to any procurement or act on the part of the prosecution. The transcript of the evidence offered had not been filed with the clerk of the district court as provided by section 2491, Comp. St. 1921, supra. But this court in the case of Baldock v. State, 16 Okla. Cr. 203, 182 P. 265, has held that such filing is not essential. It is apparent that section 2491, supra, in so far as it relates to the filing of this transcript with the

clerk of the court, is a directory and not a mandatory statute, its purpose being to provide a depository so that the question of the authenticity and identity of the transcript may not be drawn in question.

There is some diversity of authority on the admissibility of evidence where the witness can be personally present and is not physically unable to testify. 2 Wigmore on Evidence, beginning with section 1401, discusses the admissibility of this character of evidence at some length, and in section 1402 says:

"The principle upon which depositions and former testimony should be resorted to is the simple principle of necessity, i. e., the absence of any other means of utilizing the witness' knowledge. If his testimony given anew in court cannot be had, it will be lost entirely for the purposes of doing justice if it is not received in the form in which it survives and can be had. The only inquiry, then, need be, Is his testimony in court unavailable? We may of course distinguish further between testimony unavailable by any means whatever and testimony unavailable without serious inconvenience. The common-law rulings certainly stopped at unavailability of the former sort; conditions of the latter sort rest wholly on statutory sanction. But the common-law principle clearly went in theory as far as the former line, i. e., there are indications of a principle broad enough to sanction any case in which the present testimony is in fact unavailable by any means whatever. Such a broad principle was never fully and consistently enforced in practice, but clearly existed in gremio legis."

Quoting by way of illustration from Wells v. Insurance Co., 187 Pa. 166, 40 A. 802, as follows:

"The cause of the subsequently occurring incompetency is not material. It may arise from absence, from sickness, from interest, from death or from a newly created statutory incompetency; * * * such is the sense of all the modern decisions, and we think the conclusion is reasonable and just."

Greenleaf on Evidence (16th Ed.) § 162g, in enumerat-

ing the grounds sufficient to render the former testimony admissible, says:

"Disqualification since the former trial, by reason of interest, infamy, or other disqualification should be sufficient."

In the case of State v. Stewart, 85 Kan. 404, 116 P. 489, it was held (syllabus 6):

"The testimony of a witness, voluntarily given in the preliminary examination of the charge on which the accused is on trial, is admissible in evidence, where the accused had full opportunity to cross-examine the witness, and the direct testimony of the witness had become absolutely unavailable to a party by reason of such witness claiming the statutory privilege of withholding his direct testimony, because of being the husband of the accused."

Chief Justice Johnston, speaking for the court, in that case reasoned as follows:

"In this instance the witness was living and was present at the trial, but he claimed his statutory privilege and declined to testify against his wife. Crim. Code, § 215 (Gen. St. 1909, § 6791). He was a competent witness and had a right to testify against her, either with her consent or over her objection. State v. Geer, 48 an. 752, 30 Pac. 236. He had voluntarily testified in the preliminary examination in her presence, and where the accused was given full opportunity to cross-examine him and to test the accuracy and truth of his statements. That testimony had been reduced to writing and thus preserved and perpetuated for future use. It was voluntarily given by a competent witness. It was legal evidence when given. It was a closed and completed thing, capable of reproduction, and was available in subsequent trials in cases where it was the best evidence obtainable. His refusal to testify viva voce at the trial made the information, which he had formerly given, as inaccessible to plaintiff as if he had been dead or out of the jurisdiction of the court.

"It is sometimes said that the testimony of a witness at a former trial cannot be read if he is present at the trial, but its admissibility does not depend so much on the pres-

ence or availability of the witness as it does on the availability of the testimony; and the testimony of Stewart was just as unavailable as if he had walked over the state line, where process could not be served upon him. It has been held that, if a party to an action dies after a first trial, thereby rendering the other incompetent to testify, the testimony of the deceased at the first may be produced or proved at the second trial. Lee's Adm'r v. Hill, 87 Va. 497, 12 S. E. 1052, 24 Am. St. Rep. 666. In Pratt v. Patterson, 81 Pa. 114, a trial was had in which both parties testified, and the verdict returned was set aside. Afterwards the defendant died and his executors were substituted. In the next trial the plaintiff was incompetent as a witness, but it was ruled that the testimony given by him at the first trial could be proven and read in evidence. It was held by the Supreme Court of Louisiana that testimony taken and reduced to writing on a first trial is admissible in evidence, when the witness has since become interested in and a party to the suit. Wafer v. Hempken, 9 Rob. (La.) 203. Other cases of like import are Matter of Budlong, 54 Hun, 131, 7 N. Y. Supp. 289; Evans v. Reed, 78 Pa. 415; Wells v. Insurance Co., 187 Pa. 166, 40 A. 802; Gold v. Eddy, Administrator, 1 Mass. 1; Smithpeters v. Griffin's Adm'r, 49 Ky. 261.

"If a witness cannot prevent the use of his testimony by stepping outside the jurisdiction of the court, or the acquiring of an interest, or other act which disqualifies him as a witness, it would appear that he cannot defeat the use of testimony given when he was competent, and which was reduced to writing, by claiming a statutory privilege and refusing to testify viva voce when called to the witness stand. It may also be said that he did not object to the introduction of his former testimony, although such an objection probably would have been ineffectual. It is admissible because it was competent and legal when taken and preserved, and that for some reason the direct testimony of the witness cannot now be procured. All the requirements of the law were satisfied when the testimony of Stewart was taken, and when he refused to testify his former competent testimony, which was in legal form, was as admissible as if he had been dead or beyond the reach of the court's process."

The earlier case of State v. Conway, 56 Kan. 682, 44 P. 627, turns on the competency of the witness and not on the competency of evidence, and is not in point here.

There is language in the former opinions of this court (Hawkins v. U. S., supra, Davis v. State, supra, Golden v. State, supra), from which it might be inferred that this court meant to hold that the transcript of the former testimony was to be excluded in all cases, when the witness could be had in person at the final trial; but we do not so construe them. The admissibility of the transcript in those cases turned on the question of ability to procure the witness or diligence in attempting to procure, and not on the availability of his oral testimony after his presence had been procured as in Stewart v. State, supra, and as in the instant case.

We are of the opinion that the former testimony of the witness Waters was properly admitted in evidence by the court.

Upon the second assignment of error it appears that at the time of the trial and prior thereto the witness Waters was confined in jail. At the time of the beginning of the trial, counsel for defendant, in open court, stated to the court that the name of the witness Waters had appeared on the information, and was on the list of witnesses furnished by the state, and stated to the court that the witness was confined in the jail of Garvin county, and that they had made application to the sheriff to interview or confer with said witness, which request had been denied, and asked the court for an order permitting them to confer with said witness before making their announcement. This application was denied by the court. Again, when the witness Waters was put on the stand, the counsel for defendant requested leave to confer and talk with him, which was by the court denied. The defendant did not announce ready for trial.

Just before concluding the evidence of the defendant, his counsel again requested the court for leave to interview the witness Waters, stating to the court that they had had a subpœna issued for him, and desired to interview him to ascertain if they wished to call him as a witness for the defendant. This application was also denied by the court, unless they should procure the presence of the attorneys for Waters.

Section 20, art. 2, of the state Constitution provides that, in capital cases at least two days before the case is called for trial, an accused shall be furnished with a list of the witnesses that will be called in chief, together with their post office addresses.

This court in the case of State v. Frisbee, 8 Okla. Cr. 406, 127 P. 1091, says that this provision of the Constitution confers a valuable right upon a defendant, as it gives him an opportunity to make inquiry as to the character, bias, and antecedent of the witnesses against him, and to learn something of their testimony and thereby better enable him to prepare for trial. See, also, Hisaw v. State, 13 Okla. Cr. 484, 165 P. 636. Ordinarily it is discretionary with the court whether or not he will order an interview with a witness for the state. In the case of White v. State, 52 Miss. 216, the court held:

"The refusal of the court to allow the counsel for the prisoner to have any conversation with Matilda Given, she having been summoned as a witness by the defendant, and being in the courthouse when the trial began, is assigned for error. * * * Are there exceptional reasons, applicable to this witness, which would justify the order? The prisoner was jointly indicted with her; she had been convicted, and was awaiting the judgment of the court. It will not do to assume that the conversation in progress with this witness was for any other than a legitimate purpose. Suppose that the counsel proposed to introduce the woman to prove an isolated fact important to the defense. Would it not be proper to inquire in advance as to her knowledge? It might be, if she knew nothing of it, that another wit-

ness might be sent for. Without such conversations beforehand, the prisoner might be surprised on the trial, without means or ability then to repair it with other testimony."

It is true in that case the witness was subpoenaed for the defendant, but this fact would not change the rule, whereas here the defendant had had a subpoena issued for the witness, and the court had ruled that the witness was competent and not entitled to claim privilege on the ground of incrimination, and had ordered him to testify for the state, and a transcript of his evidence had been admitted. If any privilege existed, it was for the witness to claim, not the court to claim it for him. Under other conditions this denial of the right to interview might not be an abuse of discretion. Williams v. State, 53 Fla. 89, 43 So. 428; Wilkerson v. State (Tex. Cr. App.) 57 S. W. 956; Robinson v. State, 8 Okla. Cr. 667, 130 P. 121.

Where a material witness, and particularly as in this case, an accomplice, is incarcerated in jail and to that extent under the control of the prosecution, and the defendant makes application for leave to interview or question such witness in reference to his testimony, under all the facts shown here, the court should afford a reasonable opportunity for such purpose, and the denial of the request of the defendant was error.

Lastly, it is argued that there is no sufficient corroboration of the evidence of Waters, who is an accomplice of the defendant. The evidence was not corroborated other than by circumstantial evidence. But it is generally held that corroboration need not be direct, but may be circumstantial. Moody v. State, 13 Okla. Cr. 327, 164 P. 676.

Without in detail specifically pointing out the circumstances which tend to connect the defendant with the commission of the crime, and corroborating the accomplice Wa-

ters, we believe that there was sufficient on this point to go to the jury.

The case is reversed and remanded.

BESSEY, P. J., and DOYLE, J., concur.