## J. L. HOPKINS v. STATE.

No. A-1933.  Opinion Filed March 13, 1915.

(146 Pac. 917.)

1. APPEAL — Argument of Counsel — Grounds for Reversal.  The plaintiff in error and five others were jointly charged with the crime of pandering.  Upon his separate trial the assistant county attorney, in the opening argument for the state, and the county attorney, in the closing argument, commented on his failure to call as witnesses certain codefendants, both stating that the law gave the defendant the right to call his codefendants as witnesses in his behalf, and that the state could not call them.  In each instance his counsel objected to the remarks as improper and prejudicial to the rights of the defendant, and in each instance moved the court to direct the jury to disregard such improper remarks.  Held, under the constitutional guaranty that ''no person shall be compelled to give evidence which will tend to incriminate him'' (section 21, Bill of Rights), and under the statute providing that ''the person charged shall at his own request, but not otherwise, be a competent witness'' (section 5881, Rev. Laws 1910), a person charged cannot be compelled to testify either for himself, a codefendant, or for the state, while he is a party in the case, and any comment on the failure of a codefendant not on trial to testify is not within the limits of legitimate argument, and the trial court, in refusing to interpose, notwithstanding the defendant's objections, and in refusing to instruct the jury that under the law the defendant's failure to call certain codefendants as witnesses should create no presumption against him, and in refusing to direct the jury to disregard such improper remarks, gave the jury to understand that they might properly and lawfully consider the same, all of which was prejudicial to the rights of the defendant, and constitutes reversible error.

2. SAME—Argument of Counsel—Grounds for Reversal.  In this case, the strength of the testimony considered, held, that the improper remarks of the prosecuting attorneys in their arguments to the jury, and the erroneous rulings of the court thereon, may have determined the verdict.

(Syllabus by the Court.)

*Appeal from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

J. L. Hopkins was convicted of pandering, and appeals.  Reversed.

*J. T. Williams, W. M. Taylor,* and *Baldwin & Carlton,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, P. J. The plaintiff in error, J. L. Hopkins, jointly charged with Curt Leonard, W. R. Edmons, Mattie Edmons, Rena Beck, and M. A. Fowler, with the crime of pandering as defined in the Penal Code (section 2425, Rev. Laws 1910), was separately tried and convicted, and his punishment assessed at two years' imprisonment in the penitentiary and a fine of $300. To reverse the judgment an appeal was perfected.

The evidence introduced by the state was substantially the same as that introduced in the case of *Edmons v. State,* 9 Okla. Cr. 603, 132 Pac. 923, in which case will be found a full statement of the evidence. It will be noticed that the testimony of the state's witnesses Josephine Pyentka and Sylvia Sekavec shows that they secured a room at the Saddle-Rock Hotel, in Shawnee, stayed over night, and met the defendant Hopkins for the first time the next morning, and stated to him that they did not have any money to get their breakfast, and he told them he would give them their breakfast, and took them to the kitchen, and while they were there eating their breakfast he said there was a young lady there who would like to get acquainted with them; that he called in Rena Beck and introduced her to them; that after breakfast they all went to Rena Beck's room, and there, in the presence of all the defendants named, Rena Beck asked if they wanted to stay there, saying that it was the best thing to do, and they could make good money if they wanted to hustle; that Mr. Fowler would make dates for them, and keep watch and no one would catch them; that a little later they danced and jigged around to music made by Rena Beck and soon after they went out to look for work, and bought a paper and looked over the advertisements; that about 1 o'clock they returned to the Saddle-Rock and found all the defendants in Rena Beck's room; that Hopkins, Fowler, and Rena Beck told them they could have a room for nothing; that they stayed there that night,

but that the defendant Fowler got scared, and did not make any dates for them; that the defendant Hopkins stayed at the hotel that night; the next morning Mr. Fowler told them they would have to leave; that the defendants Mr. and Mrs. Edmons and Curt Leonard said they had found a room at the American rooming house for them, and they all went there; that a few days later they returned to the Saddle-Rock, and stayed there two nights; that the defendant Hopkins was not there at that time; that the defendants Leonard and Edmons made dates for them at the American rooming house, and upon their return to the Saddle-Rock the defendant Fowler made dates for them; that Rena Beck told Josephine that Mr. Hopkins wanted to make a date with her; that the defendant Hopkins, so far as they knew, had nothing to do with the making of the dates that were made for them.

For the defense Rena Beck, a codefendant, testified that at the time she was doing housework and cooking at the Saddle-Rock Hotel; that she fixed breakfast for the girls in the kitchen, and then went to Mrs. Edmons' room, and the girls later followed her there; that Sylvia said she had been a sporting girl for nearly a year, and would like to make some money there at the rooming house, and witness told her that they could not do that there; that Mr. Hopkins or Mr. Fowler did not allow that in the house; that they went out and returned that evening together; that the next morning she told Mr. Fowler about the girls saying that they were sports and wanted to sport there, and Mr. Fowler made them leave, and they left to go to the American rooming house; two or three days later Josephine came back to the Saddle-Rock and wanted to work there, and Mr. Fowler told her if she would stay there and be a nice girl and behave herself and help witness do the work he would give her $3 a week; that the defendant Hopkins was not there at that time; that the next day she and the girls were arrested; that she only remembered seeing the defendant Hopkins once while the girls were there, and that was the morning he told her to fix the girls something to eat.

W. M. Seaborn testified that he was rooming at the Saddle-Rock when the girls came there; that he heard the defendant Hopkins at one time say to them that if they did not go to their room and behave themselves he was going to put them out of the house.

George Lair testified that he had been rooming at the Saddle-Rock ever since Mr. Hopkins had it; that before the girls came there he heard Mr. Hopkins tell Mr. Fowler that he wanted him to keep an orderly house, and not permit prostitutes to room there.

J. L. Hopkins, as a witness in his own behalf, testified that he met the girls at his hotel one morning, and they said that they had lost the only dollar they had and didn't have any money to get breakfast with, and he told them to come to the kitchen and get breakfast; that he was away that day, and returned that evening, and these girls were running through the house and going on in a way that did not suit him, and he told them if they did not stop it he would put them out, and the next morning he told Mr. Fowler, who conducted the hotel for him, to put them out, and they left with Mr. and Mrs. Edmons; that he never remembered seeing them after that. Cross-examined, he stated that his wife and seven children lived on his farm in Lincoln county; that he stayed there a part of the time and part of the time on his farm on the South Canadian; that he had never before been arrested.

The errors assigned are substantially the same as those passed on in the Edmons case, *supra*, with the following exception: Error is assigned on misconduct of the prosecuting attorneys in their arguments to the jury and the rulings thereon of the trial court.

It appears from the record that in the course of his opening argument for the state the assistant county attorney used the following language:

"Where is Fowler, and where is Edmons and Edmons' wife, codefendants of this man on trial? The state could not call them."

Counsel for the defendant immediately objected to this language as improper and prejudicial to the defendant, and moved the court to instruct the jury not to consider said statement for any purpose. The court overruled the motion, and allowed an exception.

It also appears that in the course of his closing argument for the state the county attorney used the following language:

"Where is Edmons? He is one of these fellows. He did not give you his story. Why? The law gives the defendant the right to call him and produce him. For some reason he is not here. For some reason he does not face the music. There is something wrong."

Counsel for the defendant objected, and moved the court to instruct the jury not to consider the remarks of the county attorney. The court overruled the objection and denied the motion and allowed exceptions. Thereupon the county attorney used the following language:

"Where is Mrs. Edmons? She was there. Why didn't she come and tell her story if it would be valuable to the defendant? He knew he did not dare. Why didn't he produce her and let you look into her face and get the benefit of this evidence?"

The defendant again objected, and moved the court to admonish the jury not to consider the remarks of counsel for any purpose. Objection overruled, motion denied, and exceptions allowed. The county attorney, continuing, used the following language:

"Curt Leonard, he is another fellow down there. The evidence shows you that he is what you would call, in politics, a ward-heeler. The evidence shows you he was not here to tell you his story. The defendant had a right to call him and let you look into his face and let you listen to his story."

Counsel for the defendant again objected, and moved the court to instruct the jury not to consider the statement for any purpose.

"The Court: Overruled. (The defendant excepts.)"

The statute provides that in all criminal proceedings:

"The person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him, nor be

mentioned on the trial; if commented upon by counsel, it shall be ground for a new trial." (Section 5881, Rev. Laws 1910.)

In the case of *Irvin v. State, ante,* 146 Pac. 453, it is said:

"A codefendant is competent as a witness only at his own request. He is given the option to testify if he desires to do so. Under the constitutional provision that 'no person shall be compelled to give evidence which will tend to incriminate him' (section 21, Bill of Rights), and of the statute above quoted, he cannot be compelled to testify, either for himself, a codefendant, or for the state while he is a party in the case (*Buxton v. State, ante,* 143 Pac. 58), and any comment on the failure of a codefendant not on trial to testify is not within the latitude of legitimate argument. However, a comment on the failure of a codefendant not on trial to take the stand cannot be considered as a comment on the failure of the defendant on trial to testify within the purview of the last clause of the statute above quoted."

The following provisions of our Procedure Criminal prescribe the manner and mode of compelling a codefendant to testify as a witness, conditioned upon his ceasing to be a party in the case:

"When two or more persons are included in the same indictment or information, the court may, at any time before the defendants have gone into their defense, on the application of the county attorney, direct any defendant to be discharged from the indictment or information, that he may be compelled to be a witness for the state." (Section 5879, Rev. Laws 1910.)

"When two or more persons are included in the same indictment or information, and the court is of opinion that in regard to a particular defendant. there is not sufficient evidence to put him on his defense, it must, before the evidence is closed, in order that he may be compelled to be a witness for his codefendant, submit its opinion to the jury, who, if they so find, may acquit the particular defendant for the purpose aforesaid." (Section 5880, Rev. Laws 1910.)

The county attorney and his assistant, in using the language above quoted, misstated the law, and such statements are contrary to the spirit of the law, which seeks, by well-established rules, to prevent the possibility of prejudice. The language used conveys the idea, and was intended to convey the idea, that the defendant on trial had it in his power to compel each of his codefendants, whether willing or unwilling, to testify in his be-

half. That this language was prejudicial to the defendant cannot be doubted. The general rule that, if a defendant has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do so creates the presumption that the testimony, if produced, would be unfavorable, and is a circumstance against him, has no application to the nonproduction of codefendants. If the defendant had called his codefendants as witnesses in his behalf, they could not have been compelled to testify, and, if when called, they had then refused to testify, this might have been construed by the jury to the defendant's disadvantage.

The Attorney General's brief cites the cases of *Manning v. State,* 7 Okla. Cr. 367, 123 Pac. 1029, and *Hampton v. State,* 7 Okla. Cr. 291, 123 Pac. 571, 40 L. R. A. (N. S.) 43, wherein this court held that the failure of the defendant to call his wife as a witness, where the facts show that she would be a material witness in his behalf, is a proper subject of comment to the jury by counsel for the state. The doctrine of those cases is not in point. Our statute (section 5882, Rev. Laws 1910) authorizes the wife to be a witness for the husband, and his failure to produce her, where the facts show she would be a material witness for him, is, both upon principle and authority, a legitimate subject for criticism on the part of the state. See *Graves v. U. S.,* 150 U. S. 118, 14 Sup. Ct. 40, 37 L. Ed. 1021.

Under the constitutional and statutory provisions, no presumption could arise from the failure of the defendant on trial to call his codefendants as witnesses in his behalf, and the jury should have been left to try the issue upon the evidence introduced. The court by refusing to sustain the objections to the improper remarks, and in refusing to instruct the jury that, under the law, the defendant had no more right than the state had to call his codefendants as witnesses, and that his failure to call certain codefendants as witnesses should create no presumption against him, and the court's failure to direct the jury to disregard such improper remarks as not within the limits of legitimate argument, gave the jury to understand that they might

properly and lawfully consider the same, all of which was manifestly prejudicial to the substantial rights of the defendant.

Considering the doubtful character of the testimony introduced against the defendant, we think the improper remarks of the prosecuting attorneys in their arguments to the jury and the erroneous rulings of the court thereon probably determined the verdict.

For the reasons stated, the judgment herein is reversed.

FURMAN and ARMSTRONG, JJ., concur.