## SAM WELLS v. STATE.

No. A-4655.  Opinion Filed Jan. 10, 1925.
(231 Pac. 1087.)

(Syllabus.)

1.  **Trial—Witnesses—Codefendant not Compelled to Testify—Comment on Failure of Codefendant to Testify Improper.** A codefendant is competent as a witness only at his own request. He is given the opportunity to testify if he desires to do so, and he cannot be compelled to testify either for himself, a codefendant, or for the state, where he is a party in the case. And any comment on the failure of a codefendant to testify is not within the latitude of legitimate argument.

2.  **Appeal and Error—Comments of County Attorney on Failure of Codefendant to Testify Held Prejudicial.** Where there is a close question of guilt on the evidence, comments of the county attorney in his argument to the jury, calling attention to the fact that the codefendant failed to testify, were prejudicial to both defendants.

Appeal from District Court, Beckham County; T. P. Clay, Judge.

Sam Wells was convicted of larceny of a calf, and he appeals. Reversed and remanded.

See, also, 26 Okla. Cr. 269, 223 P. 1118.

Tracy & Minton, for plaintiff in error.

The Attorney General, and G. B. Fulton, Asst. Atty. Gen., for the State.

BESSEY, J.  Sam Wells, plaintiff in error, hereafter referred to as the defendant, was jointly charged with Wilson Weaver with the larceny of a red calf. At the trial, by a verdict of the jury, both defendants were found guilty and each was sentenced to confinement in the penitentiary for a term of two years. A motion for a new trial which was filed was sustained as to Weaver, but overruled as to this defendant. Wells alone prosecutes this appeal.

Practically the only questions involved in this appeal

are whether the evidence is sufficient to support the verdict and whether the court erred in overruling the defendant's motion for a new trial for reasons appearing in the bill of exceptions, made a part of the record in this case. This bill of exceptions discloses the following:

"While the county attorney was making his opening address to the jury, the county attorney made the statement in substance and effect as follows: 'I am sorry that the defendants did not place Wilson Weaver on the stand. I wanted to ask him certain questions.' To which remarks of counsel for the state the defendants at once objected and excepted, and asked the court to restrain the county attorney from all references to the fact said defendant did not testify in his own behalf, and the court thereupon told the county attorney that such remarks were not permissible and advised the jury to disregard them. That thereafter, during the same argument, the county attorney frequently made the statement, in substance and effect, that 'the defendants did not deny this.' That the defendants objected and excepted to said remarks, and the court again, several times, advised the jury wholly to disregard the same. And the defendants at the time objected to all said remarks, and excepted to the same, and asks that this bill of exceptions be allowed, signed, and ordered filed as of the record in this case."

This bill of exceptions was allowed, signed, and the court clerk ordered to file the same as part of the record.

In order that the two assignments of error to be treated in this opinion may be understood, it will be necessary to recite some of the facts disclosed by the record in this case.

From the evidence it appears that at about 1 or 2 o'clock of the afternoon of Saturday, February 11, 1922, Wilson Weaver and Sam Wells went to the farm of S. T. Bonifield, in Beckham county, and purchased from him a red muley male calf, about one year old, having certain white marks on the forehead, flanks, and other portions of the body, and having been branded with a flying "K"; the

brand being then somewhat obscured by the growth of hair on the animal. The consideration was $12.50, which was paid by a check written by Weaver, as agent for John Basham for whom Weaver had been buying cattle in the neighborhood. Wells informed Bonifield that they had some other business to attend to and would return later to take the calf away. About sundown the two men returned, at which time Wells sold Bonifield some posts and Bonifield returned to Wells the Weaver-Basham check in part payment for the posts. The two men then led off the calf which they had purchased, by means of a rope tied around its neck.

Defendant claims that after they had proceeded some distance, they tied this calf· to a fence along the highway and went to a place where they had some whisky hidden, and that when they returned they could not find the calf. By this time it was 8 or 9 o'clock at night, and both men were more or less under the influence of intoxicating liquor. They commenced to search thereabouts for the calf that had broken away, and between 9 and 10 o'clock they found a male calf, a red muley animal, which they supposed to be the one they had purchased, and drove it to the home of defendant Wells. On the following morning they butchered this calf and hung the dressed meat in the barn and buried the offal, hide, and head near by. The calf which they had actually purchased from Bonifield was found a day or two later on a neighbor's premises. Bonifield identified this calf and corroborated the defendant Wells concerning the circumstances of its purchase. Wells said that when the check which Weaver had given on Basham for the purchase price of the calf was returned to him in part payment for the posts, he told Bonifield he regarded it as a cancellation of the check, and that he did not intend to present it for payment.

On Monday, the day following the butchering the calf, a deputy sheriff went to search the premises of the

defendant Wells. A portion of this officer's testimony is as follows:

"Q. State to the jury what took place when you first met Mr. Wells, and from then on through the search. A. Well, I went to Mr. Wells and told him I had a search warrant for his place, and he said, 'All right, go ahead.' I said, 'We have got a beef missing and want to search for it,' and he said, 'Help yourself.' I went over to the barn and found four quarters of what looked to be a yearling hanging up in the barn. I said, 'Sam, where is the hide?' He said, 'Right over the fence, there, buried.' I said, 'Get a shovel, let's dig it up.' We got a shovel and dug it up. I asked Sam why he buried it, and he said it wasn't worth a 'damn.' The hide was put down first and the entrails on top of the hide. Wells told me they bought a yearling from Mr. Bonifield; * * * that they might have gotten hold of the wrong one. I said, 'Sam, you don't mean to tell me that Bonifield's animal wasn't branded.' He said, 'I didn't see any brand.' He said 'I am willing to pay old man O'Brien for this animal if it belonged to him.' He said, 'They was both muley, red yearlings, and the one I bought got away, and I might have gotten the wrong one. I had it tied with a bridle rein, and it broke the bridle rein and got away.' He said that if it was O'Brien's calf he would go and pay for it."

This conviction rests largely on circumstantial evidence. A seemingly rational explanation was made by the defendant of his possession of the property, making it a close question upon the facts for the consideration of the jury. For this reason the misconduct of the county attorney complained of, as disclosed by the bill of exceptions, may have been the decisive influence that caused the jury to bring in a verdict of guilty. Notwithstanding the fact that the court admonished the jury to pay no attention to the prejudicial remarks of the county attorney, the prejudicial effect was probably not cured. The motion for a new trial was sustained as to Weaver, and the question here presents itself as to whether this motion should not also have been sustained as to Wells because of these remarks.

Under the Constitution and statutes of this state, Weaver could not be compelled to testify in his own behalf. It follows, therefore, that Wells could not force Weaver to testify in his behalf. It will be noted in the bill of exceptions that the remarks of the county attorney applied to both defendants. The court, in admonishing the jury to pay no attention to the remarks of the county attorney, should have gone further and told the jury that the defendant Wells had no power to compel his codefendant, whether willing or unwilling, to testify in his behalf. In the case of Hopkins v. State, 11 Okla. Cr. 385, 146 P. 917, the court said:

"Under the constitutional and statutory provisions, no presumption could arise from the failure of the defendant on trial to call his codefendants as witnesses in his behalf, and the jury should have been left to try the issue upon the evidence introduced. * * * The defendant had no more right than the state had to call his codefendants as witnesses, and that his failure to call certain codefendants as witnesses should create no presumption against him."

If this be the rule, the prejudicial remarks made by the county attorney, under the circumstances here shown, were equally prejudicial against both defendants, so that if Weaver was entitled to a new trial for this reason, Wells would likewise be entitled to a new trial. The reasons and authorities for this conclusion are well stated in the Hopkins opinion, supra.

This being a close case on the facts, in which the jurors may well have entertained a reasonable doubt of the defendant's guilt from the facts appearing in evidence tending to show that the defendants may have made an honest mistake in the recovery and slaughter of the calf in question, the prejudicial remarks of the county attorney may have been the turning point in the case which dissolved that doubt and caused the jury to bring in the verdict of guilty —and this notwithstanding the fact that the court admon-

ished the jury to pay no attention to the objectionable remarks.

On this question the statute, section 2698, Comp. Stat. 1921, provides that in all criminal proceedings the person charged shall, at his own request, but not otherwise, be a competent witness, and that his failure to make such request shall not create any presumption against him, or be mentioned on the trial; and if commented upon by counsel it shall be ground for a new trial. In the case of Irvin v. State, 11 Okla. Cr. 301, 146 P. 453, it was said:

"A codefendant is competent as a witness only at his own request. He is given the option to testify if he desires to do so" and "he cannot be compelled to testify, either for himself, a codefendant, or for the state, while he is a party in the case. * * * And any comment on the failure of a codefendant not on trial to testify is not within the latitude of legitimate argument." Buxton v. State, 11 Okla. Cr. 85, 143 P. 58.

The defendant contends that he purchased a calf similar to the one in question; that the calf accidentally got away; and that he took the calf in question, believing it to be the one he had purchased. The state's theory of the transaction was that the defendant purchased a calf similar to the one in question for the purpose of creating a situation or chain of circumstances that would enable him to escape prosecution for the stealing of the calf which he took and butchered. In other words, it is the theory of the state that the defendant intended to steal a calf in the first instance, and that the purchase of the other calf was for the purpose of evading detection. There is evidence to support both theories, and which of the theories was the correct one was a question for the jury.

This being a close question on the evidence, the comments of the county attorney as to the codefendant's failure to testify were prejudicial to both defendants. And

for the error of the trial court in denying defendant Wells' motion for a new trial, the cause is reversed and remanded.

MATSON, P. J., and DOYLE, J. concur.