Edgar Adair ALBERTY, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–204.

Court of Criminal Appeals of Oklahoma.

Jan. 31, 1977.

Rehearing Denied April 4, 1977.

Gene Stipe and Carl D. Hughes, Oklahoma City, for appellant on appeal.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Edgar Adair Alberty, hereinafter referred to as defendant, was charged in the District Court, Adair County, Case No. CRF–74–52, with the offense of Murder in the Second Degree. A change of venue was granted to Cherokee County and defendant was convicted of the lesser included offense of Manslaughter in the First Degree in violation of 21 O.S.1971, § 711. His punishment was fixed at four (4) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Gene Harlin testified that on July 30, 1974, he was the sheriff of Adair County; that at approximately 9:10 p.m., he responded to a call to Burke's Bar in Westville, Oklahoma. There he observed Alva Kindle lying on the floor with a gunshot wound. He identified State's Exhibit No. 1 as a gun he found in the northeast corner of the building. After talking to the persons present, he proceeded to the defendant's residence and arrested him. Defendant was advised of his Miranda rights and stated that "his daughter and her husband had had a lot of trouble, family trouble, and he had stood just as much as he could, and he said he shot Alvie." [Tr. 21–22] Defendant was taken to the District Attorney's Office for further interrogation. The defendant again admitted shooting Kindle.

Trooper Don Spradlin testified that he assisted in the investigation at the bar. He helped put Kindle onto a stretcher and into the ambulance. He picked up several .45 caliber shell casings in the bar and gave them to Sheriff Harlin.

Loyd Cole testified that on July 30, 1974, he was the Assistant District Attorney for Adair County. He interrogated defendant at the courthouse concerning the incident. Defendant was advised of his Miranda rights and acknowledged the waiver thereof. Defendant stated that while driving through Westville he observed his son-in-law, Alva Kindle, in the bar with another woman. Defendant went home and got a gun. He returned to the bar and his wife went inside to talk to Kindle. His son, Bill, followed his wife into the bar. He entered the bar and observed his son and Kindle fighting. He fired two shots into Kindle while he was on the floor wrestling with Bill. He stated that he shot him because he had been mistreating his daughter.

Officer J. R. Berger testified that he went to the tavern on the night in question. He observed a man had been shot and was lying on the floor approximately two feet from the bar.

Dr. Michael Rudko testified that he performed surgery on Alva Kindle. Kindle had two entrance wounds in the back and multiple organ damage. He expired several hours after the operation. He testified that the cause of death was massive hemorrhage from multiple trauma caused by the bullet wounds.

Carl Cloud testified that he was a Firearm and Toolmark Examiner for the Oklahoma State Bureau of Investigation. He test-fired State's Exhibit No. 1 and compared the spent cartridges with those found at the scene of the offense. He testified that in his opinion the cartridges were fired by the gun.

Otis Hardcastle testified that on July 30, 1974, he was employed as an investigator for the District Attorney's Office. He arrived at the bar as they were carrying Kindle to an ambulance. He went with Sheriff Harlin to defendant's residence where Alberty was arrested.

Larry Guthrie testified that he was in the bar drinking beer on the evening in question. He observed defendant's wife come into the bar and have a conversation with Kindle. Shortly thereafter, defendant's son, Bill, entered the bar and went over to Kindle and struck him. They proceeded to

fight and both fell to the floor. Defendant next came into the bar and shot Kindle while he was wrestling with Bill. He grabbed the defendant and Lee Vaughn took the gun away from him. He let go of him and when he looked around defendant and his wife "were gone."

Beatrice Lea testified that she was with Kindle in the bar on the evening of July 30, 1974. Defendant's wife came into the bar and said that she wanted to speak to Kindle. They were engaged in a conversation when Bill Alberty came into the bar. Bill struck Kindle and they started fighting. She heard a shot and saw someone trying to take a gun away from the defendant.

Arthur Lee Vaughn, Kindle's brother-in-law, testified that he was in the bar on the evening in question. He heard a shot and observed the defendant bending over Kindle. The defendant fired a second shot before he could stop him. He assisted Larry Guthrie in taking the gun away from him. He emptied the gun by firing it into the ceiling and threw it against the wall.

Cecil Collins testified that he went to the tavern with Larry Guthrie, arriving at approximately 8:45 p.m. He observed Bill Alberty come into the tavern and strike Kindle. They started fighting and fell to the floor. He heard shots and observed Vaughn and Guthrie taking the gun away from the defendant.

Steve Hubbard testified that he was also in the bar on the evening in question. His testimony did not differ substantially from the testimony of witness Collins.

Claudine Whitmire testified that she was talking to Alva Kindle when defendant's wife entered the tavern. They were talking when Bill Alberty walked up and struck Kindle, and a scuffle ensued. She observed defendant shoot Kindle while he was lying on the floor.

Sharon Christie testified that she was also in the bar on the evening of July 30, 1974. She heard shots and observed Larry Guthrie taking a gun away from the defendant.

Etta Harper, Kindle's widow, testified that she was worried about her husband not being home on the evening in question. She went to town and observed lights flashing in front of the bar. She entered and observed her husband lying on the floor in pain.

■ Defendant first asserts that the trial court erred in giving Instruction No. 6. The record reflects that Instruction No. 6 provided as follows:

"You are instructed that evidence has been offered tending to show flight by the defendant shortly after the commission of the crime alleged against him in the amended information. If you find from the evidence that the defendant did at some time flee from the place of the alleged crime and that such flight was induced by his apprehension of being charged with a public offense by reason thereof of Murder in the Second Degree, this is a circumstance to be considered by you, in connection with all the other evidence, to aid you in determining the question of the guilt or innocence of the defendant."

We are of the opinion that this assignment of error is without merit. The evidence presented on behalf of the State clearly showed that the defendant left the bar shortly after the shots were fired. Larry Guthrie testified that after taking the gun away from the defendant, he released him and that both he and his wife departed. Beatrice Lea testified that she observed the defendant leaning over Kindle and "he started to run toward the door." [Tr. 224] Sheriff Harlin and Investigator Hardcastle testified that they arrested the defendant at his residence. We, thus, conclude that the question of the defendant's intent in leaving the scene was a proper question for the jury. In *Padillow v. State*, Okl.Cr., 501 P.2d 837 (1972), wherein a similar instruction was given, we stated:

"Such an instruction on the flight of a defendant after the commission of a crime is not prejudicial, if supported by the evidence. This Court has held in many cases that evidence of flight is ad-

missible, because it is a circumstance tending to show consciousness of guilt. This Court in *Bruner v. State,* 31 Okl.Cr. 351, 238 P. 1000 (1925) stated:

'Flight of a defendant is a circumstance tending to prove guilt, and where the state offers evidence of the conduct of defendant tending to prove flight, and the defendant offers evidence in explanation of such conduct, it is proper to submit the question of flight to the jury as a matter of fact for their determination, and to instruct them that, if they find beyond a reasonable doubt that the defendant fled, it may be considered as a circumstance tending to prove guilt.' "

■ Defendant contends in the second assignment of error that the trial court erred in entering a judgment and sentence of conviction because it was without jurisdiction and the judgment and sentence was thus void. Defendant argues that the trial court in Cherokee County was without jurisdiction in that no order of removal appears in the record. Defendant cites as authority, Article II, § 20 of the Oklahoma Constitution, and the implementation statute, 22 O.S.1971, § 562, which provides, in part, as follows:

"The order of removal from the county must be entered upon the minutes and the court clerk must thereupon make out, and within ten (10) days transmit to the county to which the action is removed, a certified copy of the order of removal and the record, and shall transmit the pleadings including the undertaking for the appearance of the defendant, and of the witnesses, and the cause must be docketed and stand for trial within six (6) months from the date the cause was ordered removed. . . ."

We are of the opinion that this assignment of error is improperly before us in that it was raised for the first time in defendant's Amended Petition in Error. We have previously held that the provisions of Article II, § 20 relate to venue rather than jurisdiction. See *Key v. Page,* Okl.Cr., 424 P.2d 99 (1967). We have further held

that the question of venue must be raised at or before trial and cannot be raised for the first time on appeal. See, *Application of Poston,* Okl.Cr., 281 P.2d 776 (1955); *Henson v. State,* Okl.Cr., 317 P.2d 732 (1957), and *Emerson v. State,* Okl.Cr., 327 P.2d 505 (1958).

■ Defendant lastly asserts that the trial court erred in allowing Beatrice Lea to testify when her name was not endorsed on either the Information or the two Amendments thereto. We disagree. The record reflects that the name of Beatrice Crittenden is endorsed on the Information and the two subsequent Amendments. The trial transcript reflects that the District Attorney made the following remark when calling the witness:

"Beatrice—I think it is Lea now—but I have it on the Information as Crittenden." [Tr. 200]

The defendant's trial counsel did not object to the witness testifying. The record further reflects that defendant was aware that Beatrice Crittenden and Beatrice Lea were one and the same person in that defendant's trial counsel executed an Affidavit for nonresident service setting forth such identity. In *Blackwood v. State,* Okl.Cr., 525 P.2d 1369 (1974), we stated:

"Even if the endorsement on the Information of the witness under the name of Betty Wentz was incorrect, the defendant waived his objection to her testimony under authority set forth in *Plumlee v. State,* Okl.Cr., 361 P.2d 223 (1961) and quoting from *Britt v. State,* Okl.Cr., 285 P.2d 441, which held:

' "The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion for a postponement or a continuance in which he should set out the facts constituting

such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. Where he fails to do this the error, if any, is waived." ' . . .

"In the instant case, in the absence of any claim that the accused, through his counsel, had been unable to locate or contact the witness Betty Wentz, before trial, in counsel's failure to show surprise over the introduction of the witness, and in view of the cumulative nature of her testimony, we cannot conclude that it was error to refuse to grant a continuance."

We, therefore, find this assignment of error to be without merit.

In conclusion we observe the record is free of any error which would cause reversal or justify modification. The judgment and sentence appealed from is, accordingly, AFFIRMED.

BRETT, P. J., and BLISS, J., concur.