Michael Wayne HOWELL, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–88–1045.

Court of Criminal Appeals of Oklahoma.

Sept. 16, 1994.

Rehearing Denied Nov. 1, 1994.

Robert Macy, Dist. Atty., Ray Elliott, Asst. Dist. Atty., Oklahoma City, at trial for State.

Tim Wilson, Paul Faulk, Public Defender's Office, Oklahoma City, at trial for defendant.

Chris Box, Oklahoma City, at trial for co-defendant.

David Autry, Asst. Public Defender, Oklahoma City, on appeal, for appellant.

Robert H. Henry, Atty. Gen., A. Diane Hammons, Asst. Atty. Gen., Oklahoma City, on appeal, for appellee.

## OPINION

JOHNSON, Vice Presiding Judge:

Appellant, Michael Wayne Howell, was tried by jury and convicted of Murder in the First Degree (With Malice Aforethought), 21 O.S.1981, § 701.7, Case No. CRF–87–6784, in the District Court of Oklahoma County before the Honorable Richard W. Freeman. The jury, finding three (3) aggravating circumstances, recommended punishment of death. The trial court sentenced accordingly. From this Judgment and Sentence, Appellant has perfected this appeal and Oral argument was held before this Court.

There is no dispute that Appellant, accompanied by co-defendant Mona Lisa Watson, shot and killed USAF Sergeant Charlene Calhoun on November 2, 1987. Sgt. Calhoun was fatally wounded by one gunshot beneath her right eye in the parking lot of her apartment complex in Del City, Oklahoma. After the incident, Ms. Watson set fire to the truck in which she and Appellant came to Oklahoma City, which was later determined to have been stolen. Appellant and Ms. Watson loaded the victim's body into deceased's car, which Appellant drove to a deserted area of town where he dumped the body. The body was found on November 17, 1987.

On November 29, 1987, Appellant and Ms. Watson were captured in a police shoot-out in Florida. They were driving Sgt. Calhoun's car and Appellant was in possession of the handgun which was later identified as the murder weapon.

Appellant, who was tried jointly with Ms. Watson, defended on the grounds of self-defense and defense of another, namely, Ms. Watson.

## I. ISSUES RELATED TO JURY SELECTION

■ Issues regarding jury selection were raised in Appellant's propositions VII and XXX. In proposition VII, Appellant asserts that despite "extensive" questioning about his employment background by both the State and the defense, jury Foreman, Les Bays, failed to reveal that he worked for the Central Intelligence Agency's Air America following his discharge from the Marine Corps. Appellant's defense attorney discovered this information after trial and asked Mr. Bays why he did not reveal this information. Mr. Bays responded, "You didn't ask the right questions." The defense attorney stated that had he known Mr. Bays had worked for the CIA, he would have excluded him on a peremptory challenge because CIA activities are akin to law enforcement connections.

Appellant, citing *Tibbetts v. State,* 698 P.2d 942, 945 (Okla.Cr.App.1985), argues that juror Bays' deliberate withholding of pertinent information was "not consistent with the principles of fundamental fairness." Appellant's reliance on *Tibbetts* is misplaced, and the proposition is denied.

In proposition XXX, Appellant asserts that the method of venire panel selection from those persons eighteen years or older who hold current valid driver's licenses and who reside in the county where the trial is held results in the systematic exclusion of numerous potential jurors who are unable or unwilling to obtain driver's licenses. Appellant further questions the constitutionality of a system which involves the systematic exclusion of jurors over 70 years of age.

■ First, we note that 38 O.S.1981, § 28(A) does not systematically exclude persons over 70 years of age from serving on juries. This statute provides that those over 70 years of age have the option of declining jury service. We have previously addressed this issue and are unpersuaded to change our holding. See *Fox v. State,* 779 P.2d 562, 566 (Okl.Cr.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990).

■ Concerning the complaint regarding the selection of juries from those with driver's licenses, we continue to adhere to the test enunciated in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), that to show prima facie violation of the fair-cross section requirement, an appellant must show (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires is not fair and reasonable in relation to the number of such persons in the community; (3) this under-representation is

caused by systematic exclusion of that group in the jury selection process.

Neither this Court nor the U.S. Supreme Court has defined the term "distinctive group." However, we do find guidance in the three-prong test enunciated in *Ford v. Seabold*, 841 F.2d 677 (6th Cir.1988):

> (1) that the group is defined and limited by some factor (*i.e.*, that the group has a definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas or experience runs through the group; and (3) that there is a community of interest among members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process.

*Id.*, 841 F.2d at 682. Appellant has alleged as distinctive groups, the physically impaired, certain religious groups, such as the Amish, Mennonites and those whose tenets forbid photographs as forbidden images, out-of-state college students and military personnel who "do not need a driver's license." Appellant offers no authority in support of the assertions he ascribes to these groups, and such proposition is denied.

### FIRST STAGE EVIDENCE

 In the fourth proposition of error, Appellant claims that the trial court committed fundamental and reversible error in declaring Ms. Watson unavailable and admitting her preliminary hearing testimony into evidence in the State's case-in-chief. The record reveals that Ms. Watson, pursuant to a plea bargain agreement, agreed to testify on behalf of the State. She did so at the preliminary hearing. Her testimony provided the evidence to support the malice aforethought element of the first degree murder charge. She admitted during the preliminary hearing that she and Appellant drove around the apartment complex looking for a car to steal. She admitted that she spoke to Ms. Calhoun for the purpose of diverting her attention while Appellant shot her. She testified that she burned the truck they were driving and helped to load Sgt. Calhoun's body into her car.

Ms. Watson subsequently changed her mind about the agreement, alleging that she was the target of coercion and suggestion with respect to the substance of her preliminary hearing testimony. Several pre-trial motions and hearings were had on this issue as well as objections at trial. The trial court overruled the motions and objections to the admission of the preliminary hearing testimony at trial.

 The threshold issue to be determined in this case is whether co-defendant Watson was actually unavailable to testify for the State. It is generally recognized that the "availability" of a witness depends as much on the production of his or her testimony as it does on his or her presence in court. Testimony from a witness who will claim a privilege is, for all practical purposes, just as inaccessible as if he or she were dead or out of the jurisdiction of the court. *Mason v. United States*, 408 F.2d 903 (10th Cir.1969).

 In Oklahoma, a person charged with a crime is a privileged witness who cannot be made to testify (except at his or her own request) in a trial where the person or any co-defendant is being tried for the respective charge. See 22 O.S.1981, § 701 which provides as follows:

> In the trial of all indictments, informations, complaints and other proceedings against a person charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this State, the person charged shall at his own request, *but not otherwise*, be a competent witness . . .

This Court decided more than a half a century ago in *Wells v. State*, 29 Okla.Cr. 11, 231 P. 1087 (1927), that a co-defendant may testify if he so desires, but cannot be compelled to testify either for himself, his co-defendant or for the State, where he is a party in the case. We further noted in *Morris v. State*, 68 Okla.Cr. 147, 96 P.2d 88 (1946), that where two or more persons are jointly charged with the commission of a felony and separately tried, each is a competent witness for or against a co-defendant, if he voluntarily elects to become a witness. (Emphasis added)

In this case, it would have resulted in prejudicial error if the State had called co-defendant Watson to the stand with knowledge that she would invoke her privilege against self incrimination. *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963). *See also Fletcher v. United States,* 332 F.2d 724, 727 (D.C.Cir. 1964) which held that the refusal of a witness, who claimed the Fifth Amendment privilege, added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.

■ Therefore, we hold that co-defendant Watson was unavailable to testify. Holding as such, we address Appellant's claim that his Constitutional right of confrontation was violated by the admission of co-defendant Watson's preliminary hearing statement. We disagree.

■ The admission of preliminary hearing testimony is governed by the rules of evidence, which condition the use of prior testimony on a showing of necessity arising out of the unavailability of a witness. 12 O.S.1981, § 2804(A) and § 2804(B)(1). Section 2804(B)(1) requires that the testimony be given under circumstances such that the person against whom the testimony is now offered had an opportunity and similar motive to develop the testimony. *See Exleton v. State,* 30 Okla.Cr. 224, 235 P. 627 (1925), where this Court held that a transcript of the evidence given by a co-defendant, who testified at the preliminary examination of the defendant, was admissible in evidence when the co-defendant, at the later trial, refused to testify on the ground of self-incrimination, even though at a trial a few days earlier the co-defendant had been found guilty and sentenced and although he still had the right to appeal. This Court noted that the defendant's right to confront the witness and cross-examine him had existed during the preliminary examination and could not be regarded as barring use of the transcript in the present trial.

■ We recognize that a preliminary hearing serves a more limited function than does a trial and that the right of confrontation is basically a trial right. *Barber v. Page,* 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968). In this case, co-defendant Watson's testimony at the preliminary hearing was given in circumstances closely approximating those of a typical trial. Her testimony was made under oath in a truth-inducing courtroom atmosphere. Appellant was represented by counsel, through whom Appellant had ample opportunity to cross examine Ms. Watson. Thus, Ms. Watson's prior testimony was obtained in full compliance with the criteria articulated in *California v. Green,* 399 U.S. 149, 165, 90 S.Ct. 1930, 1938–39, 26 L.Ed.2d 489 (1970), as necessary to adequately safeguard Appellant's right of confrontation.

Further, the argument that cross examination at a preliminary hearing can never satisfy the confrontation requirement has been rejected by the United States Supreme Court in *Ohio v. Roberts,* 448 U.S. 56, 72, 100 S.Ct. 2531, 2542, 65 L.Ed.2d 597 (1980).

We find that the preliminary hearing testimony of co-defendant Watson was properly admitted in evidence by the trial court.

■ In proposition VI, Appellant claims that the trial court erred in allowing the State to question Ms. Watson about the effects of her subsequent rejection of her plea agreement on pending murder charges in Tennessee. Appellant concedes that the questioning did not explicitly mention Appellant's name. However, Appellant asserts that it was obvious from the context of the question that both he and Ms. Watson were charged with the murders, "since the evidence showed them to be constant companions." We decline to accept Appellant's argument. Evidence of other crimes which is apparent only to defense counsel will not constitute reversible error. *Mahorney v. State,* 664 P.2d 1042, 1046 (Okl.Cr.1983).

■ In proposition VIII, Appellant complains that the trial court committed reversible error when it allowed the State to impeach him by revealing the "nature" rather than the "number" of his prior convictions. Appellant argues that prejudice was great because the prior convictions were for same or similar crimes as the current charge. The

prior convictions were Armed Robbery, two (2) charges of Attempted First Degree Murder, Shooting into an occupied vehicle, two (2) charges of Resisting an officer with violence, Use of a firearm while committing a felony and Possession of a Firearm by a Convicted Felon. Appellant relies on our holdings in *Robinson v. State,* 743 P.2d 1088 (Okl.Cr.1987) and *Hardiman v. State,* 798 P.2d 222 (Okl.Cr.1990).

We first note that defense counsel filed a motion in limine as to the prior convictions. The trial court made no ruling prior to trial. However, he failed to raise a contemporaneous objection at trial. This Court, in *Nealy v. State,* 636 P.2d 378, 381 (Okl.Cr.1981) citing *Teegarden v. State,* 563 P.2d 660 (Okl.Cr. 1977), held that to properly preserve the issue contained in a motion in limine, the proposition must be introduced at trial, and if overruled, objections should occur at that time. Thus, this issue is not properly before this Court.

■ Appellant argues in proposition XIV that he was deprived of a fair and impartial trial in both stages due to the admission of State's Exhibit 19, which depicted the face of the victim at the time her body was discovered days after the killing. The photograph showed decomposition and decay to the face. Defense attorney's objection to the admission of the photograph on the grounds that its prejudicial effect outweighed its probative value was summarily overruled. While the State offered no reason at trial for the admissibility of the photograph, on appeal it suggested that the photo established the corpus delicti, depicted the nature of the victim's injuries and corroborated other testimony. The admission of the photograph is in the discretion of the trial court. We find no abuse. *Thompson v. State,* 711 P.2d 936 (Okl.Cr.1985).

## FIRST STAGE JURY INSTRUCTIONS

■ In proposition II, Appellant asserts that the trial court committed reversible error by refusing to give his requested OUJI–CR 745 instruction, which provides as follows:

It is the burden of the State to prove beyond a reasonable doubt that the defendant was not acting in self-defense. If you find that the State has failed to sustain that burden, then the defendant must be found not guilty.

■ Once the defendant has presented sufficient evidence to warrant a self-defense instruction, OUJI–CR 745 accurately sets forth the State's shifting burden of proof. This Court held in *Perez v. State,* 798 P.2d 639 (Okl.Cr.1990), that OUJI–CR 745 must be given in all cases tried after September 21, 1990. In cases tried prior to that date, this Court will look to the jury instructions as a whole to determine whether they adequately advise the jury of the State's shifting burden when self-defense is raised by the defendant. We have reviewed the instructions in this case and find that the instructions as a whole do adequately advise the jury of the State's shifting burden of proof. In this case, all of the instructions as to self-defense were given except OUJI–CR 745, seventeen (17) in all. We do not find that upon review of the totality of the instructions they were inadequate. We find that the instructions were adequate.

■ Appellant presents two sub-propositions in proposition III. First, he asserts that the trial judge's refusal to instruct that Ms. Watson was an accomplice as a matter of law and that her testimony must be corroborated and was reversible error. Second, Appellant contends that Ms. Watson's testimony was not sufficiently corroborated.

■ The trial court probably should have given the appropriate accomplice instructions. However, in *Wade v. State,* 624 P.2d 86, 90 (Okl.Cr.1981), citing *Plummer v. State,* 515 P.2d 256 (Okl.Cr.1973), this Court held that where there is overwhelming evidence of guilt and the presence of sufficient corroborating testimony, the failure to so instruct is harmless. In this case, Appellant himself corroborated Ms. Watson's testimony, when he testified and admitted that he shot the victim in self-defense and in defense of Ms. Watson. Title 22 O.S.1981, § 742 mandates that other evidence that "tends to connect the defendant with the commission of the offense" must be present. Here, if Ms. Wat-

son's testimony is corroborated in one material fact by independent evidence tending to connect Appellant with the commission of the crime, the jury may infer that all of her testimony is truthful. See *Maxwell v. State,* 742 P.2d 1165, 1169 (Okl.Cr.1987). We find the independent physical evidence, together with appellant's testimony, corroborates Ms. Watson's evidence. This proposition is without merit.

■ In his fifth assignment of error, Appellant asserts the trial court committed reversible error when it refused to give his requested instruction allocating the burden of proof with respect to manslaughter in the first degree by heat of passion on which the court instructed. He cites *United States v. Lofton,* 776 F.2d 918 (10th Cir.1985), as holding that reversal is mandated where the trial court did not instruct the jury *sua sponte* that the State had to prove beyond a reasonable doubt that a defendant did not kill in the heat of passion. However, the Tenth Circuit Court of Appeals, in *Davis v. Maynard,* 869 F.2d 1401, 1406 (10th Cir.1989), cert. granted and vacated on other grounds, on remand 911 F.2d 415, cautioned that it did not read *Lofton* so broadly. It distinguished *Lofton* from *Davis,* which is factually similar to the case at hand. The Court held:

> Aside from the two cases' procedural differences, Davis, unlike Lofton, never raised the heat of passion defense at his trial. Instead, his sole defense was self-defense. The instruction on manslaughter presumably was given because under Oklahoma law, that crime is a lesser included offense of first degree murder. Whether such an instruction under the facts of this case was warranted is debatable. But the instructions in this case, unlike those in Lofton, explicitly defined malice and heat of passion as mutually exclusive. The jury's finding of malice necessarily implies the absence of heat of passion. At least where the defense is not squarely raised and the instructions properly define the differing mental states, the jury need not be instructed specifically that the prosecution must prove the absence of heat of passion when the element of malice is neither presumed nor required to be dis-

proved by the defendant. (Citations omitted. Emphasis added.)

Id. at Pages 1406–1407. We are satisfied that under the facts of this case and based on the totality of the instructions, there was no error here.

■ Appellant contends in proposition IX that the trial court committed reversible error when it refused to give his requested instruction on second degree felony murder committed in the course of the grand larceny of the victim's automobile. This Court held in *Ross v. State,* 717 P.2d 117, 121 (Okl.Cr. 1986) that second degree felony murder is not a lesser included offense of premeditated murder. Thus, this proposition fails.

■ In Appellant's proposition X, he asserts that the trial court committed reversible error in failing to give his requested cautionary instruction on Ms. Watson's status as an informant. First, we do not believe that under the facts in this case that Ms. Watson qualifies as an informant. Secondly, even if Ms. Watson was an informant as to the evidence elicited through her preliminary hearing testimony, the trial court was not required to give the cautionary instruction where corroboration existed for her testimony. *Gilbert v. State,* 766 P.2d 361, 363 (Okl. Cr.1988), citing *Johns v. State,* 742 P.2d 1142 (Okl.Cr.1987).

■ In proposition XI, Appellant contends that the trial court erred by giving a flight instruction, thus allowing the jury to determine guilt or innocence based on improper considerations and lessening the State's burden of proof. Appellant testified that he killed the victim in self-defense and in defense of Ms. Watson. He offered his own explanations of why he took her vehicle, dumped her body, set his truck on fire and left the State. This evidence could be evidence of flight which could raise the inference that impelled by a guilty conscience, Appellant attempted to avoid arrest. Since Appellant presented evidence to rebut the inference, the trial court properly submitted the issue to the jury. See *Alberty v. State,* 561 P.2d 519, 521 (Okl.Cr.1977).

■ Next, Appellant argues that the trial court committed reversible, fundamental er-

ror when it failed to give an instruction on prior inconsistent statements made by Ms. Watson. In his proposition XII, Appellant refers, not only to the State's questioning of Ms. Watson about statements inconsistent with those made by her at the preliminary hearing, but also to the testimony of Ms. Watson's two former attorneys, who testified that Ms. Watson's preliminary hearing testimony was consistent with her statements to them. Appellant holds that under these circumstances, the trial court had an affirmative duty to instruct the jury *sua sponte* that this evidence could be used only for impeachment purposes and not for substantive purposes.

We do not agree. This Court, in *Jones v. State*, 772 P.2d 922, 924 (Okl.Cr.1989), held that the failure of a trial court to give a limiting instruction *sua sponte* does not automatically constitute reversible error. On the record before us, we cannot say that the failure of the trial court to give a limiting instruction *sua sponte* deprived Appellant of a substantial right rising to the level of plain error.

## PROSECUTORIAL MISCONDUCT

 In proposition XIII, Appellant cites numerous instances of prosecutorial misconduct during both stages of trial which he claims deprived him of a fair and partial trial. Such conduct in the first stage of trial involved a "physical pushing" of the defense attorney by the District Attorney, who subsequently called the jury's attention to it by saying that the matter would be and should be dealt with later. Second, the District Attorney asserted to the jury during closing argument that Appellant had laughed throughout the proceedings. It is highly improper for a prosecutor to comment on facts not in evidence. *McCarty v. State*, 765 P.2d 1215, 1220 (Okl.Cr.1988).

Third, the District Attorney characterized the defendants as "a pair of losers" and Appellant as an "ex-convict." Additionally, he expressed his personal opinion of the guilt of the accused. While we find these remarks improper, we do not find that they were so atrocious as to amount to fundamental or plain error. Nor do we find that the cumulative effect of the first stage errors was

such as to deprive the defendant of a fair trial, especially in view of the overwhelming evidence of guilt.

However, we have reviewed the prosecutorial comments during the second stage and find that they, combined with those of the first stage, and the improprieties between a juror and two Oklahoma County Deputy Sheriffs in charge of jury security during sequestration, constitute reversible error so as to require the vacating of the death sentence and remand for resentencing.

## SECOND STAGE PROCEEDINGS

 In the relevant assignment of error, Appellant asserts that his conviction must be reversed or the death penalty must be vacated because improper, prejudicial statements were made to a juror or jurors by Oklahoma County Deputy Sheriffs charged with juror security. Further, those comments and other activities between one of the Deputy Sheriffs and a juror deprived Appellant of his due process rights and violated a variety of State statutes. Specifically, after the trial, it was learned through investigation that on the first night the jury was sequestered, both deputies informed one of the jurors that they knew she was the only holdout for not guilty in the first stage. According to a juror's affidavit, Deputy Green told her, "that if it made me feel any better that he didn't believe Michael's story." On the second night of sequestration, after second stage evidence was presented but before sentencing deliberations, both deputies asked her if she felt better about voting for guilt after hearing that Appellant had committed a murder in Tennessee. They assured her that she had "done the right thing." As to second stage defense witness, Dr. Jonathon Lipman, Deputy Canon ridiculed his credentials and laughed at his testimony which he considered boring. According to both the juror and Deputy Cannon, they drank alcoholic beverages in the Deputies' hotel room on two successive nights and engaged in some form of sexual activity. The juror stated that she was "hung over" during the punishment stage.

There is no question that the trial court properly sequestered the jury. We are faced with the issue of the effect of *impermissive, unauthorized* and *improper* contacts by the deputies with one or more of the jurors. There will be no communication with the jury after submission of the case, by outsiders, the bailiff or court officials, unless by order of court. 22 O.S.1981 § 857.

It is sad that because of this misconduct by at least one juror and the even worse conduct by officers of the court, who had the legal duty to refrain from comments and actions as in this case, the Court must remand this case for resentencing. We hope these actions do not occur again. The waste of time, trouble and money, much less the pain of a second sentencing, is not called for but must be done.

LUMPKIN, P.J., specially concurs.

LANE, J., joins in CHAPEL's concur in part/dissent in part.

CHAPEL, J., concurs in part/dissents in part.

STRUBHAR, J., concurs.

LUMPKIN, Presiding Judge, specially concurring.

I concur in the Court's well-reasoned opinion which affirms the conviction for the offense of Murder in the First Degree. In addition, I find the comments of the Court regarding the dereliction of duty by the deputies which necessitate a remand of this case for resentencing to be very appropriate.

I also find the Court's application of *Perez v. State*, 798 P.2d 639 (Okl.Cr.1990), to be appropriate in this case. The Oklahoma Uniform Jury Instructions–Criminal (OUJI–CR) were adopted by this Court in 1981, and included the self-defense instruction which is set forth in OUJI–CR 745. However, for approximately nine (9) years, this Court would review the jury instructions as a whole to determine whether they adequately advised the jury of the State's shifting burden in cases where self-defense was raised as a defense and OUJI–CR 745 was not given. The Court, in *Perez*, recognized notice should be given that as to future cases the Court

would not continue with its review of the totality of the instructions to ensure the jury was properly instructed as to the State's burden of proof when a defense of self-defense was raised. The Court, in *Perez*, did not adopt a "new constitutional rule" which required retroactive application pursuant to *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). At most, *Perez* gave notice of the scope and method of review on appeal which would be applied by the Court. Such a change in methodology of reviewing cases on appeal by an appellate Court does not rise to the level of "constitutional rules" to which the retroactivity analysis has been used. The Court's decision in *Perez* is consistent with the legislative enactment contained in 20 O.S.1981, § 3001.1, which provides:

No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

As the Court has properly determined in this case, the instructions as a whole did properly advise the jury of the State's burden of proof as it relates to the defense of self-defense which was presented. The scope of review applicable to this case has been properly applied.

In a case which was pending on appeal at the time of the *Perez* opinion, where OUJI–CR 745 is not given in verbatim form, and the instructions as a whole appropriately advise the jurors of the State's burden of proof as it relates to the defense of self-defense, the failure to give the verbatim instruction is, at most, harmless error. *Simpson v. State*, 876 P.2d 690 (Okl.Cr.1994).

CHAPEL, Judge, concurring in part/dissenting in part:

I concur in the Court's decision to remand for resentencing. However, I dissent as to affirming the conviction. If this Court's deci-

sion in *Perez v. State,* 798 P.2d 639 (Okl.Cr. 1990), was correct, and I believe it was, then it must, in my opinion, be applied to all cases pending on direct appeal. See *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). I am authorized to state that Judge Lane joins in this writing.